UNITED STATES of America,
Plaintiff–Appellee,

v.

Rex G. ENDICOTT,
Defendant–Appellant.

No. 88–3077.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 10, 1989.

Decided March 2, 1989.

John W. Lundin, P.S., Seattle, Wash., for defendant-appellant.

1. Rex Endicott was tried along with co-defendants Allen Furlong, Joan Endicott, Bernard Warner, and John Robertson.

2. Specifically, Endicott was convicted on seven of the twelve counts in the indictment encompassing violations of 18 U.S.C. § 371 (conspiracy to illegally receive, possess, transfer and import firearms), 18 U.S.C. § 922(m) (failing to

Andrew Hamilton, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before WRIGHT, TANG and WIGGINS, Circuit Judges.

TANG, Circuit Judge:

After being convicted on various firearms charges, Rex Endicott appeals the district court's denial of his motion for a new trial based on newly discovered evidence and on juror-witness contact. We have jurisdiction under 28 U.S.C. § 1291.

I. Factual and Procedural Background

Endicott was a federally licensed firearms dealer. After a one-month jury trial,[1] he was convicted of various firearms offenses.[2] The principal government witness against Endicott was Mr. Dick Jones, a paid Bureau of Alcohol, Tobacco, and Firearms (ATF) civilian undercover agent. Endicott illegally transferred a machine gun and two undocumented pistols to Jones; conversations between Jones and Endicott were surreptitiously tape recorded. *United States v. Endicott*, 803 F.2d 506, 508 (9th Cir.1986). Endicott also sold another machine gun to informant Alex Caine. Based on information gathered by Jones, a search warrant was obtained for Endicott's home which also served as his place of business. A machine gun, other undocumented firearms, and a silencer were seized. *Endicott*, 803 F.2d at 508.

Before trial, Endicott had filed a motion asking for details on any payments, promises, or inducements given to government witnesses. Jones testified that he received a payment of over $4,000 from ATF for his role in this case.

maintain proper records concerning the sales of two pistols), 26 U.S.C. § 5861(d) (illegal possession of a machine gun and of a silencer), and 26 U.S.C. § 5861(e) (knowingly transferring two machine guns without paying transfer tax and failing to comply with transfer provisions). *United States v. Endicott*, 803 F.2d 506, 508 (9th Cir.1986).

After the close of trial, while the jury was still deliberating, government prosecutors told the court that in addition to the $4,000, a few hundred dollars was paid to Jones by Mr. Hausken, the main ATF agent on the case. For this money, Jones was to paint Hausken's car. The deliberation was stopped and these new facts were disclosed to the jury.

On August 29, 1985, the district court filed a Judgment and Commitment order sentencing Endicott to two years in prison followed by three years probation, a sentence that was later reduced pursuant to Fed.R.Crim.P. 35. Endicott's conviction was sustained on appeal. *United States v. Endicott*, 803 F.2d 506 (9th Cir.1986). Endicott served his prison sentence and was released in March 1987.

After Endicott served his sentence, Jones approached Endicott's counsel and made certain disclosures about supposedly newly discovered evidence and improper jury-witness contact.

First, Jones revealed that Hausken made additional promises to pay money to Jones that had not been previously disclosed to defense counsel or to the court.

Second, Jones also disclosed that during the trial, he was approached by one of the jurors who said something like "we have them hung, they are guilty" and that "we will have to listen to all the rest of the b.s.". At that time, Jones informed Hausken of this encounter with the juror and was told to keep quiet about it. Indeed, after an internal ATF investigation of this incident, Hausken was disciplined and transferred to another jurisdiction.

In addition, government witness Gary Trudo testified at trial that he had purchased a [3] "fully automatic" machine gun from co-defendant Robertson. According to Endicott, before the trial was over, an ATF agent inspected the weapon and found that it was only semi-automatic, but this information was not disclosed to the jury. The government has pointed out that the weapon was a "fully automatic FN–FAL machine gun in which semi-automatic parts

were easily interchangeable with fully-automatic parts." *Appellee's Brief*, Exhibit A. Furthermore, according to a government attorney's affidavit, Robertson sold to Trudo not only the weapon but also the automatic parts which could be inserted in less than ten minutes. *Id.* Endicott disputes these facts, stating that the weapon in question is a legal semi-automatic rifle that is incapable of being transformed into an illegal automatic machine gun.

## II. "Newly Discovered Evidence"

■ A district court's denial of a new trial based on newly discovered evidence is reviewed for an abuse of discretion. *United States v. Kenny*, 645 F.2d 1323, 1343 (9th Cir.), *cert. denied*, 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981). While the government bears the burden of proving that constitutional errors are harmless beyond a reasonable doubt, *Dickson v. Sullivan*, 849 F.2d 403, 405 (9th Cir.1988), the defendant carries a "significant burden" to show that the district court abused its discretion in denying a new trial. *United States v. Steel*, 759 F.2d 706, 713 (9th Cir. 1985). The district court's findings of fact are to be accepted unless clearly erroneous. *Johnson v. United States Postal Service*, 756 F.2d 1461, 1464 (9th Cir.1985).

### A. *Materiality Requirement*

In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), the Supreme Court held that

> the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment.

The proper standard of materiality must reflect the overriding concern with finding a defendant guilty only if proven beyond a reasonable doubt. *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976).

Concerning the definition of "material," the Court has noted that

---

**3.** The briefs conflict concerning whether there were one or two weapons involved.

[t]he mere possibility than an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.... A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial. *Agurs*, 427 U.S. at 104, 109–10, 96 S.Ct. at 2400.

Furthermore, to warrant a new trial, the new evidence must not be merely cumulative or impeaching. *United States v. Krasny*, 607 F.2d 840, 843 (9th Cir.1979), *cert. denied*, 445 U.S. 942, 100 S.Ct. 1337, 63 L.Ed.2d 775 (1980); *see also United States v. Lopez*, 803 F.2d 969, 977 (9th Cir.1986); *cert. denied*, 481 U.S. 1030, 107 S.Ct. 1959, 95 L.Ed.2d 530 (1987).

### B. *New Evidence that Government Witness Told Untruths*

Under the Due Process clause, criminal prosecutions must comport with prevailing notions of fundamental fairness. *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984). Indeed, the deliberate deception of the court by the presentation of false evidence is incompatible with rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 765, 31 L.Ed.2d 104 (1972). Thus, if the prosecution knowingly uses perjured testimony, or if the prosecution knowingly fails to disclose that testimony used to convict a defendant was false, the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury verdict. *United States v. Bagley*, 473 U.S. 667, 678–80, 105 S.Ct. 3375, 3381–83, 87 L.Ed.2d 481 (1985). On the other hand, in the absence of the prosecution's knowing use of perjury, new evidence is material under the *Brady* standard, warranting a new trial,

only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *United States v. Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383.

### C. *Fault of Government Prosecutors*

In the instant case, it appears that any nondisclosure of evidence may have been the fault, not of the prosecutors themselves, but of other government agents.[4] But

> whether the nondisclosure is a result of negligence or design, it is the responsibility of the prosecutor. The prosecutor's office is an entity and as such it is the spokesman for the Government. *Giglio*, 405 U.S. at 154, 92 S.Ct. at 766.

Furthermore, in *United States v. Butler*, 567 F.2d 885, 891 (9th Cir.1978), we concluded that

> [t]he prosecutor is responsible for the nondisclosure of assurances made to his principal witnesses even if such promises by other government agents were unknown to the prosecutor. Since the investigative officers are part of the prosecution, the taint on the trial is no less if they, rather than the prosecutor, were guilty of nondisclosure.

Indeed, it is the character of the evidence, not the character of the prosecutor, that determines whether nondisclosure constitutes constitutional error. *Agurs*, 427 U.S. at 110, 96 S.Ct. at 2401.

### D. *New Evidence Concerning Credibility of Witnesses*

■ The obligation under *Brady* to produce evidence material to a defendant's guilt or punishment includes production of impeachment evidence. *Bagley v. Lumpkin*, 798 F.2d 1297, 1300 (9th Cir.1986). Furthermore, exposure of a witness' motivation in testifying is a proper and important function of the constitutional right of

---

4. For example, with respect to the undisclosed promises to Jones, it is apparent that agent Hausken was aware of this information at trial; it is not clear that the prosecutors themselves were aware of the information. Hausken was also aware of the allegedly improper contact Jones had with a juror.

cross-examination. *Davis v. Alaska,* 415 U.S. 308, 316–17, 94 S.Ct. 1105, 1110–11, 39 L.Ed.2d 347 (1974).

There exists a constitutional obligation on prosecutors to report to the defendant and to the court whenever government witnesses lie under oath. *Trombetta,* 467 U.S. at 485, 104 S.Ct. at 2532. Furthermore, when the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility warrants a new trial irrespective of the good faith or bad faith of the prosecution. *Giglio,* 405 U.S. at 153–54, 92 S.Ct. at 765–66. But newly discovered evidence to impeach a government witness does not warrant a new trial when the evidence would not have affected the jury's assessment of the witness' credibility and when the witness was subjected to vigorous cross-examination. *Steel,* 759 F.2d at 714.

### E. Conclusions

With respect to the newly discovered evidence concerning (a) additional promises that the government made to Jones and (b) whether Endicott's weapon was semi-automatic, there is no doubt that some government agents had knowledge of the evidence during the trial, although it is unclear whether the prosecutors themselves were previously aware of this evidence. In any event, this knowledge can be imputed to the prosecutors. *Giglio,* 405 U.S. at 154, 92 S.Ct. at 766; *Barbee v. Warden,* 331 F.2d 842 at 846 (4th Cir.1964).

Then, assuming that the government knowingly failed to disclose the use of false testimony,[5] Endicott's conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury verdict. *United States v. Bagley,* 473 U.S. at 678–80, 105 S.Ct. at 3381–83. On the other hand, if the government did not knowingly use false testimony, Endicott's conviction should be reversed only if there is a "reasonable possi-

bility" that this misconduct affected the verdict.

*1. Undisclosed Evidence Regarding Additional Payments to Jones.* Certainly, the fact that the government made promises of payment to a witness could be useful to a jury in assessing the witness' credibility. *Davis v. Alaska,* 415 U.S. 308 at 316–17, 94 S.Ct. 1105, 1110–11, 39 L.Ed.2d 347 (1974). Failure to disclose such information could conceivably warrant a new trial. *Bagley v. Lumpkin,* 798 F.2d at 1300.

Even assuming, arguendo, that there was knowing use of false testimony on the part of the government, Endicott should not be granted a new trial because there is not a reasonable likelihood that the information about the additional promises made to Jones could have resulted in acquittal. First, unlike the situation in *Giglio,* 405 U.S. at 153–54, 92 S.Ct. at 765–66, the government presented substantial evidence against Endicott independent of Jones' courtroom testimony. Second, because every contact between Endicott and Jones was tape recorded, definitive corroboration existed. *Appellee's Brief* at 2. Third, because the jury was already informed that Jones received money from the ATF, new evidence that Jones was promised more money than previously disclosed seems somewhat cumulative. *See Krasny,* 607 F.2d at 843. Even though the government's actions were less than exemplary, we decline to order a new trial on this ground.

*2. Undisclosed Evidence Regarding Certain Weapon Being Semi–Automatic, Not Fully Automatic.* Even Endicott appears to concede that

> it may be illegal to possess a semi-automatic weapon along with parts that are readily insertable in a short period of time into the legal (sic?) weapon which would make it fire automatically. *Appellant's Opening Brief* at 25.

Endicott, however, claims that the weapon in question was only semi-automatic, was

---

5. The false testimony would be (a) that Jones only received the payments from the government about which he testified, and (b) that the weapon that Robertson sold to Trudo was semi-automatic.

completely legal to possess, and that the automatic parts involved were incapable of transforming the weapon into an illegal automatic machine gun. *Id.* at 26–32. If this were true, and there is a factual dispute involved, then an essential element of the crimes involving this weapon would be lacking. But in denying the motion for a new trial, it can be presumed that the district court resolved this factual dispute in favor of the government, a finding to which we must give deference. *Johnson v. United States Postal Service,* 756 F.2d at 1464. Thus, following this point of view, the "newly discovered evidence" is not truly new evidence at all, and the district court did not abuse its discretion in denying a new trial on this ground. Furthermore, there was sufficient evidence supporting Endicott's conspiracy independent of the factual dispute surrounding this particular weapon.

### III. Improper Juror Contact

In general, a district court's decision to deny a motion for a new trial is reviewed for an abuse of discretion. *United States v. Shaffer,* 789 F.2d 682, 687 (9th Cir.1986).

According to Rule 33, a motion for a new trial based on grounds other than newly discovered evidence:

> shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7–day period.

Indeed, we have reiterated that this seven-day statute of limitations is jurisdictional. *United States v. Lara–Hernandez,* 588 F.2d 272, 275 (9th Cir.1978). Judgment was entered against Endicott on August 29, 1985. His motion for a new trial was not filed until September 2, 1987, well past the seven day limit.

The question, then, is whether the alleged improper juror contact constitutes "newly discovered evidence" for the purposes of Rule 33, in which case Endicott's motion would be timely. Because neither Endicott nor the court were previously aware of the improper juror contact, this evidence can be considered "newly discovered" for the purposes of Rule 33. *Lara–Hernandez; see also United States v. Brown,* 476 F.2d 933, 935 n. 11 (D.C.Cir. 1973).

If improper juror-witness contact does not prejudice the defendant, a new trial need not be ordered. *United States v. Crisco,* 725 F.2d 1228, 1233 (9th Cir.), *cert. denied,* 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 832 (1984); *see also United States v. Weiner,* 578 F.2d 757, 765 (9th Cir.), *cert. denied,* 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed. 2d 651 (1978) (contact between juror and court bailiff not prejudicial). In fact, a defendant must establish "actual prejudice" resulting from an improper juror contact in order to receive a new trial. *United States v. Madrid,* 842 F.2d 1090, 1094–95 (9th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 269, 102 L.Ed.2d 257 (1988); *but see Dickson v. Sullivan,* 849 F.2d 403, 409 (9th Cir.1988) (jurors overhearing a deputy sheriff make incriminating remarks about the defendant was sufficiently prejudicial as to warrant a new trial).

In the instant case, the contact between Jones and the juror was inconsequential. Indeed, there are no allegations that Jones responded to the juror in any way. The contact did not prejudice Endicott. Again, although the government acted improperly in not reporting this incident to the court, the district court did not abuse its discretion in denying the motion for a new trial on this ground.

### IV. Summary

The district court's refusal to grant a new trial was not an abuse of discretion and its judgment is

AFFIRMED.