972 F.2d 1345
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Johnnie Romeal GUESS, et al, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lajean Antoinette GUESS, Defendant-Appellant.
 Nos. 91-50171, 91-50172.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 1, 1992.
Decided Aug. 20, 1992.
 
 1
 Before D.W. NELSON and DAVID A. THOMPSON, Circuit Judges, and PANNER, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Johnnie Romeal Guess and LaJean Antoinette Guess appeal their convictions for conspiracy to distribute cocaine base and distribution of cocaine base. Both defendants contend that the government failed to disclose exculpatory evidence, violating the rule of Brady v. Maryland, 373 U.S. 83 (1963). LaJean Guess contends that the trial court abused its discretion in denying her motion for continuance. Johnnie Guess contends that the evidence against him was insufficient and that the trial court erred in enhancing his sentence. We affirm.
 
 BACKGROUND
 I. The Transaction
 
 4
 On September 8, 1990, Byron Bolton, a confidential informant for the DEA, had a chance encounter with York Wallace, a former high school classmate. Bolton told Wallace that he wanted to buy seven or eight ounces of rock cocaine.
 
 
 5
 On September 10, Wallace told Bolton that he had a "prospect." Bolton drove while Wallace directed him to LaJean Guess's Inglewood apartment. The parties dispute what happened next.
 
 
 6
 LaJean Guess testified that she initially told Bolton she wanted no part of a drug transaction. A few minutes later, Bolton asked her, "So what do you want for hooking me up with one of your homeboys?" LaJean Guess said that she wanted her rent money, $400, and Bolton agreed.
 
 
 7
 Bolton denied making a side deal with LaJean Guess. He testified that Wallace introduced him to LaJean Guess as "the dude that wanted to get the seven ounces." She immediately replied, "Yeah, I know. I'm supposed to count the money and make sure it's right."
 
 
 8
 Later that day, LaJean Guess told Bolton that her "cousin" would deliver seven ounces of rock cocaine at $800 an ounce. LaJean Guess testified that the "cousin" was her codefendant Johnnie Guess. She mentioned to Bolton that she wanted to complete the transaction because she needed rent money.
 
 
 9
 During the next two days, defendants repeatedly promised Bolton that Johnnie Guess would soon have the cocaine. While LaJean Guess was stalling Bolton to ensure that the deal was consummated, she was rejecting York Wallace's numerous attempts to buy cocaine.
 
 
 10
 On September 13, 1990, Johnnie Guess confirmed the terms of the sale with Bolton and agreed to meet Bolton in a parking lot that afternoon. Defendants met Bolton as arranged, and Johnnie Guess gave Bolton a paper bag containing 182 grams of cocaine base. Defendants were then arrested.
 
 II. Proceedings
 
 11
 Before trial, the prosecutor did not disclose whether Bolton had a criminal history. On the first day of trial, November 27, 1990, the DEA special agent supervising Bolton testified that Bolton had one arrest for a traffic violation.
 
 
 12
 The trial court ordered the prosecutor to investigate Bolton's criminal history and to inform the court and defense counsel of his findings. The next morning, the prosecutor stated that Bolton's "rap sheet" showed arrests on July 20, 1989 for commercial burglary and issuing insufficient fund checks. The rap sheet did not indicate whether Bolton had been convicted.
 
 
 13
 At trial, Bolton testified that he had never been convicted. On November 29, 1990, defense counsel made a proffer regarding Bolton's convictions and an outstanding felony arrest warrant. On November 30, 1990, the prosecutor stated for the first time that Bolton had misdemeanor convictions for writing bad checks and commercial burglary. Bolton admitted committing other, uncharged, crimes. Based on this information, defendants moved to dismiss and for a mistrial because of Brady violations.
 
 
 14
 On December 4, 1990, the trial court denied defendants' motions to dismiss or for a mistrial, finding that the government had not willfully suppressed Bolton's criminal record. The court concluded that allowing defendants to cross-examine Bolton again would cure any Brady violation.
 
 
 15
 LaJean Guess's attorney moved for a two-day continuance to review transcripts of Bolton's testimony from other trials. The court denied the motion.
 
 
 16
 During defendants' second cross-examination of Bolton, Bolton admitted having prior convictions, but denied lying about them. He testified that he had thought a conviction could occur only after a jury returned a guilty verdict. He assumed that he had no convictions because he had pleaded guilty.
 
 
 17
 On December 7, 1990, the jury returned guilty verdicts on both counts as to both defendants. After the jury was discharged, a juror told one of the defense attorneys that some jurors considered the second cross-examination of Bolton a desperate last-minute defense trick. Based on the juror's statements, defendants moved to dismiss the indictment or for a new trial. The court denied the motion.
 
 
 18
 Defendants then obtained transcripts of Bolton's testimony from three other trials in the same district. On November 21, 1989, Bolton testified in United States v. Robins, No. CR 89-332-SVW, that he had been arrested for failure to pay traffic tickets but had never been convicted. On March 20, 1990, Bolton testified in United States v. Bilal, No. CR 89-720-HLH, that the only illegal acts he had committed were failures to pay traffic tickets. On August 30, 1990, Bolton testified in United States v. Harris, No. CR 90-495-DT, that he had a misdemeanor conviction for driving under a suspended license. Bolton's testimony in Harris showed his understanding that guilty pleas resulted in convictions.[1]
 
 
 19
 Relying on these transcripts of Bolton's testimony, defendants again moved to dismiss or for a new trial. The trial court denied the motions.
 
 
 20
 At sentencing, Johnnie Guess contended that a prior felony drug conviction was invalid. The court disagreed and imposed the mandatory minimum sentence of twenty years. See 21 U.S.C. §§ 841(b)(1)(A), 851.
 
 DISCUSSION
 I. The Brady Issue
 
 21
 The government must produce any evidence in its possession that is favorable to the defendant and material to guilt or punishment. United States v. Boshell, 952 F.2d 1101, 1106 (9th Cir.1991). Favorable evidence includes evidence that impeaches the credibility of key government witnesses. United States v. Streit, 962 F.2d 894, 900 (9th Cir.1992). Evidence is material only if there is a reasonable probability that releasing the evidence to the defense would have changed the verdict. Boshell, 952 F.2d at 1106 (citing United States v. Bagley, 473 U.S. 667, 678 (1985)). A "reasonable probability" is a probability "sufficient to undermine confidence in the outcome." Id. This court reviews de novo a district court's ruling on alleged Brady violations. United States v. Monroe, 943 F.2d 1007, 1012 (9th Cir.1991), cert. denied, 112 S.Ct. 1585 (1992).
 
 
 22
 LaJean Guess contends that the "reasonable likelihood" test applies here. This court uses the reasonable likelihood test when the prosecution "knowingly uses perjured testimony," or "knowingly fails to disclose that testimony used to convict a defendant was false." United States v. Endicott, 869 F.2d 452, 455 (9th Cir.1989). The court will set aside the conviction "if there is any reasonable likelihood that the false testimony could have affected the jury verdict." Id. (citing Bagley, 473 U.S. at 678-80).
 
 
 23
 Here, the district court found that the government had neither knowingly used perjured testimony nor knowingly failed to disclose that evidence used to convict defendants was false. Instead, the government had failed to disclose prior inconsistent statements made by Bolton in other cases. We agree with the district court that the reasonable likelihood test does not apply.
 
 
 24
 A. Criminal History Evidence Disclosed At Trial
 
 
 25
 The prosecution must disclose favorable evidence when disclosure would help the defendant. United States v. Aichele, 941 F.2d 761, 764 (9th Cir.1991). The prosecution need not turn over the evidence before trial. Id.
 
 
 26
 Here, defendants were able to cross-examine Bolton about his criminal history. Because defendants presented the impeaching evidence to the jury, there was no prejudice. See United States v. Gordon, 844 F.2d 1397, 1403 (9th Cir.1988) (no prejudice when defendants allowed to recall witnesses for further cross-examination). The allegation that some jurors thought the second cross-examination of Bolton was a defense trick is not relevant.
 
 B. Transcripts Discovered After Trial
 
 27
 The government did not disclose the transcripts of Bolton's testimony obtained by defendants after trial. Because the transcripts were favorable to defendants, the issue is whether they were also material.
 
 
 28
 The trial court found that defendants' second cross-examination of Bolton was so effective that any additional damage to Bolton's credibility would not have affected the outcome of the trial. Defendants were able to show that Bolton had committed crimes involving dishonesty. However, the transcripts would have established that Bolton lied about his understanding of the word "conviction" and that he had perjured himself in three other trials. The transcripts would have gone a long way toward demolishing what was left of Bolton's credibility.[2]
 
 
 29
 Although we have doubts about the trial court's evaluation of the transcripts' worth, we agree with the court's ultimate conclusion that disclosing the transcripts was not reasonably likely to have affected the outcome of the trial. Even if the jury believed LaJean Guess's testimony that Bolton had offered her $400 to arrange the transaction, she could not have proven entrapment.
 
 
 30
 To prove entrapment, LaJean Guess would have to show that she was an otherwise innocent person induced to commit an illegal act by the trickery, persuasion, or fraud of a government agent. United States v. Hart, 963 F.2d 1278, 1283 (9th Cir.1992) (citing United States v. Smith, 802 F.2d 1119, 1124 (9th Cir.1986)). In determining whether a criminal defendant is predisposed to commit a crime, the court examines (1) the character or reputation of the defendant, including any prior criminal record; (2) whether the government initially suggested the criminal activity; (3) whether the defendant engaged in criminal activity for profit; (4) whether the defendant showed reluctance to commit the offense that was overcome by repeated government inducement or persuasion; and (5) the nature of the inducement or persuasion supplied by the government. Smith, 802 F.2d at 1124-25 (citing United States v. Busby, 780 F.2d 804, 807 (9th Cir.1986)). The most important factor is the defendant's reluctance. Id. at 1125.
 
 
 31
 Here, LaJean Guess by her own testimony showed little reluctance, because she immediately accepted Bolton's first offer. She could have backed out of the deal, but instead repeatedly stalled Bolton to ensure that the deal was consummated. She showed her ability to withdraw from a drug transaction by rejecting Wallace's repeated attempts to buy cocaine. Except for one cryptic reference to rent money, LaJean Guess did not specifically mention the $400 in the tape-recorded conversations with Bolton, even though defendants and Bolton thoroughly discussed other terms of the deal.
 
 
 32
 LaJean Guess cites United States v. Auten, 632 F.2d 478 (5th Cir. Unit A 1980). In Auten, the court remanded for an evidentiary hearing to determine whether a government witness had additional prior convictions that were not disclosed at trial. However, in Auten the witness's credibility was crucial to the government's case. 632 F.2d at 482. Here, even if the jury disbelieved Bolton's testimony, the case against LaJean Guess was still strong.
 
 
 33
 Johnnie Guess has not shown that the additional impeachment evidence would have changed the outcome of the trial for him. The tape-recorded telephone calls with Bolton and the testimony of LaJean Guess made a compelling case against Johnnie Guess.
 
 II. Denial of Motion for Continuance
 
 34
 LaJean Guess contends that the trial judge erred when he denied her motion for a two-day continuance to prepare for Bolton's second cross-examination. She argues that a continuance would have allowed her to obtain the transcripts of Bolton's previous testimony.
 
 
 35
 This court reviews the district court's denial of a continuance for abuse of discretion. United States v. Shirley, 884 F.2d 1130, 1134 (9th Cir.1989). The court should evaluate (1) the defendant's diligence in preparation; (2) the likelihood that the continuance would satisfy the defendant's need; (3) the inconvenience to the court, opposing party, and witnesses; and (4) the extent of the defendant's harm. Id. To show reversible error, the defendant must prove that the denial actually prejudiced him. Id.
 
 
 36
 The crucial factor here is the extent of harm to LaJean Guess. Because there was not a reasonable probability that the transcripts would have altered the result of the trial, the court's denial of the continuance did not prejudice LaJean Guess.
 
 
 37
 III. Sufficiency of the Evidence Against Johnnie Guess
 
 
 38
 Johnnie Guess contends that the evidence against him was insufficient. When a defendant claims that insufficient evidence supports the verdict, the court must view the evidence in the light most favorable to the government and determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. United States v. Sharif, 817 F.2d 1375, 1377 (9th Cir.1987).
 
 
 39
 On the conspiracy count, the government needed to prove beyond a reasonable doubt (1) an agreement between defendants to distribute cocaine base; (2) at least one overt act knowingly taken to further the agreement; and (3) the requisite intent to commit the substantive crime. See United States v. Meyers, 847 F.2d 1408, 1412-13 (9th Cir.1988). On the distribution count, the government needed to prove beyond a reasonable doubt that (1) Johnnie Guess distributed more than fifty grams of cocaine base; and (2) Johnnie Guess acted knowingly and intentionally.
 
 
 40
 Johnnie Guess argues that the evidence showed only that LaJean Guess set up the cocaine transaction with an unknown, unseen "cousin," and that Johnnie Guess arrived at the meeting with Bolton carrying a closed paper bag containing cocaine. However, LaJean Guess testified that Johnnie Guess was the "cousin" who procured the cocaine. Other witnesses identified Johnnie Guess as the person speaking to Bolton on the tape-recorded conversations. During one of the tape-recorded conversations, Johnnie Guess reviewed the terms of the transaction in detail and agreed to a meeting place. A reasonable trier of fact could conclude beyond a reasonable doubt that defendants conspired to obtain cocaine base and that Johnnie Guess knew that the paper bag he gave to Bolton contained more than fifty grams of cocaine base.
 
 
 41
 IV. Constitutionality of the Prior Felony Conviction
 
 
 42
 Johnnie Guess challenges the constitutional validity of the felony drug conviction used to enhance his sentence under 21 U.S.C. § 851. He contends that he did not understand that he had pleaded guilty to a felony.
 
 
 43
 This court reviews the voluntariness of a guilty plea de novo, and reviews issues of fact concerning the prior conviction for clear error. United States v. Newman, 912 F.2d 1119, 1123 (9th Cir.1990). Because the government proved the existence of the prior conviction, Johnnie Guess had to prove issues of fact by a preponderance of the evidence. 21 U.S.C. § 851(c)(2).
 
 A. Background
 
 44
 Johnnie Guess was arrested on December 13, 1989, for outstanding traffic warrants. After the arrest, four bags containing a total of two grams of marijuana were found in his shoes. Johnnie Guess states that the marijuana was for his personal use.
 
 
 45
 Johnnie Guess assumed that he would be charged with a misdemeanor because he had less than an ounce of marijuana. At the arraignment and change of plea on February 5, 1990, Johnnie Guess does not remember anyone reading the information to him. Count I of the information charged that Johnnie Guess willfully and unlawfully transported or sold marijuana in violation of California Health and Safety Code section 11360(a).
 
 
 46
 Johnnie Guess states that the deputy public defender, William Clark, advised him to plead guilty to avoid going to jail. Johnnie Guess states that he did not realize that he had pleaded guilty to a felony until a probation officer told him.
 
 
 47
 At the time of the plea, Clark had about ten years' experience as a deputy public defender. Although Clark did not remember the hearing at issue, he customarily explained charges to clients and emphasized the seriousness of violating felony probation.
 
 
 48
 During the change of plea, the prosecutor stated that "the defendant will receive the time served and felony probation at a sentencing and the proviso is that he's not on felony probation or parole at this time." Johnnie Guess stated that he understood his right to a jury trial, to confront witnesses against him, and against self-incrimination. The prosecutor then told Mr. Guess that "at the time of your sentence, the court is going to put you on formal felony probation. If you violated any term or condition of probation, the court could then return you and violate you and send you to the maximum term for state prison for this offense which is up to four years." Johnnie Guess said that he understood.
 
 
 49
 The prosecutor said he wanted a plea to count I. Johnnie Guess conferred with Clark, and then agreed to plead to count I. The trial court accepted the plea, specifically finding that Johnnie Guess understood the nature of the crime charged and the consequences of the guilty plea.
 
 B. Discussion
 
 50
 For a guilty plea to be constitutional, there must be an "affirmative showing that it was intelligent and voluntary." Boykin v. Alabama, 395 U.S. 238, 242 (1969). The defendant's waivers of constitutional rights "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970) (footnote omitted). The court must ensure that the accused "has a full understanding of what the plea connotes and of its consequence." Boykin, 395 U.S. at 244.
 
 
 51
 Here, the trial judge correctly concluded that the plea was intelligent and voluntary. Although the state court judge could have explained the elements of the charge more explicitly, the prosecutor twice told Johnnie Guess that he would be sentenced to "felony probation." Johnnie Guess was represented by an experienced attorney who customarily explained the consequences of violating felony probation. Johnnie Guess had an eleventh-grade education and he had suffered previous run-ins with the criminal justice system.
 
 
 52
 Johnnie Guess has not satisfied his burden by a preponderance of the evidence. The sentencing enhancement was proper.
 
 
 53
 AFFIRMED.
 
 
 
 *
 The Honorable Owen M. Panner, United States District Judge for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This court affirmed the judgments in Robins and Harris, and reversed the judgment in Bilal. United States v. Robins, 956 F.2d 276 (9th Cir.1992) (table) (text in WESTLAW); United States v. Harris, 959 F.2d 242 (9th Cir.1992) (same); United States v. Bilal, 959 F.2d 242 (9th Cir.1992) (same)
 
 
 [2]
 Although we affirm the district court, the government should not consider our decision as an endorsement of the prosecution's conduct. The prosecution's failure to investigate Bolton's criminal history was inexcusable. See United States v. Jennings, 960 F.2d 1488, 1490 (9th Cir.1992) (assistant United States attorney has personal responsibility to comply with Brady ). The failure to investigate tainted the trials in which Bolton testified