985 F.2d 576
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard Enrique ROJAS and George Albert Rojas, Defendants-Appellants.
 Nos. 92-10057, 92-10058.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 18, 1992.
Decided Jan. 21, 1993.
 
 Appeal from the United States District Court for the District of Nevada, No. CR-90-00265-PMP; Philip M. Pro, District Judge, Presiding.
 D.Nev.
 AFFIRMED.
 Before HUG, PREGERSON and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Richard Enrique Rojas appeals both his convictions for conspiracy to distribute cocaine and distribution of a controlled substance in violation of 18 U.S.C. §§ 846 and 841(a)(1) and his sentence. George Albert Rojas challenges only his conviction for distribution of a controlled substance.
 
 
 3
 The district court's jurisdiction was based upon 18 U.S.C. § 3231. We exercise jurisdiction over these timely appeals pursuant to 28 U.S.C. § 1291. We affirm.
 
 I.
 
 4
 Richard Rojas asserts that the Government used its peremptory challenges to remove the only possible Mexican-American member of the venire, Alfreda Ferrell, from the jury in violation of the Equal Protection Clause as interpreted by Batson v. Kentucky, 476 U.S. 79 (1986). The Government states that it challenged Ms. Ferrell because it feared her "debilitating injury" would render her unable to make an "equitable decision." We must determine whether the Government's explanation constituted an adequate race-neutral explanation for the strike.[1] See United States v. Bishop, 959 F.2d 820, 821 (9th Cir.1992).
 
 
 5
 Richard Rojas contends that although the Government's explanation may have been neutral on its face, it was not adequate to rebut the prima facie showing of discrimination. Contrary to the appellant's contention, the district court did not have an obligation to explore the reasoning behind the explanation. "At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation." Hernandez, 111 S.Ct. at 1866. There is no discriminatory intent inherent in the Government's explanation; therefore, the reason offered must be deemed race-neutral. See id.
 
 
 6
 As the Government articulated a race-neutral explanation for striking Ms. Ferrell, the burden was on the appellant to prove purposeful discrimination. Id. (citing Batson, 476 U.S. at 98). Richard Rojas offers no proof that the Government engaged in purposeful discrimination. Therefore, we hold that the Government's use of its peremptory challenges to remove Ms. Ferrell was not improper.
 
 II.
 
 7
 Richard Rojas also asserts that the jury panel did not represent a fair cross-section of the community because it contained no Mexican-Americans. Whether a particular jury satisfies the "representative jury" standard of Batson is a question of law we review de novo. Bishop, 959 F.2d at 827.
 
 
 8
 There is no dispute that Mexican-Americans are a distinctive group in the community. See Castaneda v. Partida, 430 U.S. 482, 495 (1977). However, Richard Rojas failed to show "that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community." See Duren v. Mississippi, 439 U.S. 357, 364 (1979). He demonstrated neither the percentage of Mexican-Americans in the community nor the percentage of Mexican-Americans in jury venires in the community. Cf. id. at 364-66. Moreover, the appellant produced no evidence that Mexican-Americans' "underrepresentation is due to systematic exclusion of the group in the jury-selection process." See id. at 364.
 
 
 9
 Richard Rojas failed to establish a prima facie violation of the fair-cross-section requirement. Therefore, we hold that the district court did not err in refusing to dismiss the entire jury panel.
 
 III.
 
 10
 Both appellants argue that they are entitled to a new trial because the Government failed to disclose that its informant witness, Alexander "Andy" Bayot, was under investigation and that the U.S. Attorney's office in Phoenix, Arizona had agreed to dismiss an indictment for Interstate Transportation of Stolen Cashiers Checks against Bayot in exchange for his cooperation with investigations, including this one in Nevada. The district judge assumed that the information at issue was Brady material and denied the appellants' joint motion for a new trial.
 
 
 11
 We review the district court's denial of a new trial for an abuse of discretion. United States v. Marashi, 913 F.2d 724, 732 (9th Cir.1990). Although the Government's failure to disclose the information was unintentional, we still must consider the effect on the trial. See United States v. Endicott, 869 F.2d 452, 456 (9th Cir.1989).
 
 
 12
 Impeachment evidence is considered Brady material; however, the Government's failure to disclose such evidence does not necessarily constitute grounds for a new trial. See Marashi, 913 F.2d at 732; Endicott, 869 F.2d at 455-56. "[N]ewly discovered evidence to impeach a government witness does not warrant a new trial when the evidence would not have affected the jury's assessment of the witness' credibility and when the witness was subjected to vigorous cross-examination." Marashi, 913 F.2d at 732 (quoting Endicott, 869 F.2d at 456). The appellants cross-examined Bayot at trial; therefore, the question is whether pretrial disclosure of the evidence at issue would have further enabled the appellants to discredit Bayot. See id.
 
 
 13
 As the district court correctly noted, the trial testimony painted a picture of Bayot as "someone with a history of crimes involving dishonesty, who was more than willing to help the government in the investigation of others so long as he stood to gain from this assistance." See Order on Defendants' Joint Motion for New Trial at 9. Bayot testified that he had been convicted of forgery in California. Although he insisted that his cooperation with the Government was not out of necessity to work off other cases, Bayot acknowledged that the Government was paying his bills and gave him a job as a mail handler for cooperating with the postal inspectors. In addition, he testified that he was arrested after his California prison term, but that the arrest was for the same checks that sent him to prison in the first instance. Bayot denied any pending investigation.
 
 
 14
 FBI Special Agent Darrell Foxworth testified that he first met Bayot when he was in jail for forged and counterfeit checks, that Bayot became a cooperating witness because he was under investigation for another similar crime, and that Bayot received payments and an agreement from the FBI to make his cooperation known to the U.S. Attorney. We agree with the district court that "[the] glaring inconsistency [between Foxworth's testimony and] Bayot's own testimony [could] not have escaped the jury's notice." See id. at 8.
 
 
 15
 The district judge cautioned the jury to consider carefully Bayot's credibility in his instructions. The district judge instructed the jury to consider both the extent to which Bayot's testimony may have been influenced by the receipt of Government benefits and compensation and Bayot's prior felony conviction when evaluating his testimony.
 
 
 16
 We conclude that Bayot was impeached thoroughly at trial and that the impeachment evidence in question would not have affected the jury's assessment of his credibility. Any additional impeachment evidence would have been cumulative. Furthermore, the Government presented a significant amount of other evidence, including the testimony of former co-defendant Ernesto Ruiz Quintero, sufficient to support the appellants' convictions. Therefore, we hold that the district court's denial of the appellants' joint motion for a new trial was not an abuse of discretion.
 
 IV.
 
 17
 Richard Rojas contends that the district court should have exercised its authority to grant him a downward departure to account for his "substantial cooperation," regardless of the fact that the Government did not file a motion requesting such a departure under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. The Supreme Court's decision in Wade v. United States, 112 S.Ct. 1840 (1992), controls this question.
 
 The Supreme Court stated:
 
 18
 [F]ederal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive. Thus, a defendant would be entitled to relief if a prosecutor refused to file a substantial-assistance motion, say, because of the defendant's race or religion.
 
 
 19
 It follows that a claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing. Nor would additional but generalized allegations of improper motive.
 
 
 20
 Id. at 1843-44 (citations omitted).
 
 
 21
 Because Richard Rojas has made no allegation that the Government's refusal to make a substantial-assistance motion was based on an unconstitutional motive, he is not entitled to the relief he seeks. We hold that the district court's refusal to grant the requested downward departure was proper.
 
 V.
 
 22
 Having carefully considered the briefs submitted and the arguments advanced by the parties as well as the relevant case law, we find that the remaining issues raised by Richard Rojas and George Rojas lack merit.
 
 
 23
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because the Government responded to Richard Rojas' request for a Batson reason for striking Ms. Ferrell without any prompting or inquiry from the district court, the preliminary issue of whether the appellant made a prima facie showing of intentional discrimination is moot. See Hernandez v. New York, 111 S.Ct. 1859, 1866 (1991); Bishop, 959 F.2d at 824