35 F.3d 368
 The PEOPLE OF the TERRITORY OF GUAM, Plaintiff-Appellee,
v.
Vincent P. PALOMO, Defendant-Appellant.
The PEOPLE OF the TERRITORY OF GUAM, Plaintiff-Appellee,
v.
Steven ALBERTSON, aka Fred Iyar, Defendant-Appellant.
The PEOPLE OF the TERRITORY OF GUAM, Plaintiff-Appellee,
v.
Vincent P. PALOMO, Defendant,
and
James M. Maher, Defendant-Appellant.
 Nos. 93-10256, 93-10261 and 93-10394.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 11, 1994.
Memorandum June 14, 1994.
Amended July 19, 1994.
Order and Opinion Sept. 2, 1994.
 
 Birney Bervar, Honolulu, HI, for defendant-appellant Palomo.
 Robert E. Hartsock, Moore, Ching, Boertzel, Civille, Dooley & Roberts, Agana, Guam, for defendant-appellant Albertson.
 Raymond Carl Wagner, Agana, Guam, and Milton E. Franke, Walnut Creek, CA, for defendant-appellant Maher.
 Robert C. Sacco, Atty. General's Office, Agana, Guam, for plaintiff-appellee.
 Appeals from the United States District Court for the District of Guam, Appellate Division.
 Before: FARRIS, BEEZER and RYMER, Circuit Judges.
 ORDER
 The amended memorandum disposition filed in this case on July 19, 1994 is redesignated as an opinion by Judge Beezer.
 OPINION
 BEEZER, Circuit Judge:
 
 
 1
 In this consolidated appeal, Vincent Palomo and Steven Albertson challenge the affirmance by the Appellate Division of the District Court of Guam of their convictions on six counts of aggravated murder, one count of burglary, two counts of robbery and three counts of possession and use of a deadly weapon in the commission of a felony in violation of Guam law. Palomo contends that the trial court erred in failing to suppress his unwarned statements and in excluding the testimony of three defense witnesses in violation of his Sixth Amendment right to compulsory process. He also contends that the unavailability of a transcript of the first two days of trial denied him an opportunity for meaningful appellate review in violation of principles of due process. Albertson joins in Palomo's arguments. He also contends that the court impaired his exercise of peremptory challenges by curtailing voir dire, erroneously denied his motion to dismiss the indictment due to prosecutorial misconduct during the grand jury proceedings and erroneously denied his motion for a new trial due to the government's failure to correct false testimony during trial. Albertson also takes exception to comments made by the prosecutor during closing argument.
 
 
 2
 James Maher, Palomo's court-appointed attorney, challenges the Appellate Division's order imposing sanctions for the tone and content of his briefs and for a comment he made during oral argument. He contends that the imposition of sanctions violated Local Rule 115(6)(d), governing disciplinary actions, and principles of due process. The Appellate Division had jurisdiction pursuant to 48 U.S.C. Sec. 1424-3(a). We have jurisdiction pursuant to 48 U.S.C. Sec. 1424-3(c). We affirm.
 
 
 3
 * We review de novo the Appellate Division of the District Court of Guam. People of Guam v. Camacho, 10 F.3d 608, 611 (9th Cir.1993). We review the decision of the Superior Court of Guam as if it had not been heard previously by an appellate court. Id.
 
 II
 
 4
 Albertson contends that the court erred in denying his motion to dismiss the indictment for prosecutorial misconduct during the grand jury proceedings. He points out that the government presented false testimony through Officer Howard and breached its duty to present exculpatory evidence, in violation of 8 G.C.A. Sec. 50.46, by failing to underscore several inconsistencies in LeFever's and James' statements.
 
 
 5
 There is a conflict whether we review de novo or for an abuse of discretion the denial of a motion to dismiss an indictment on the basis of prosecutorial misconduct. Compare United States v. Larrazolo, 869 F.2d 1354, 1355 (9th Cir.1989) with United States v. Gonzalez, 800 F.2d 895, 899 (9th Cir.1986). In any event, dismissal is a disfavored remedy. United States v. Rogers, 751 F.2d 1074, 1076-77 (9th Cir.1985). This is especially true when sought after the conclusion of trial. Guam v. Muna, 999 F.2d 397, 399 (9th Cir.1993); see generally United States v. Mechanik, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986). Under these circumstances, dismissal is appropriate only when "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair." Muna, 999 F.2d at 399 (quotations omitted).
 
 
 6
 Albertson's argument is without merit regardless of the proper standard of review. The government's presentation of Officer Howard's testimony did not constitute misconduct in any legally significant way, much less "render the proceedings fundamentally unfair." Officer Howard's confusion about the facts caused no discernible prejudice to the defendants, and, most significantly, his testimony was subsequently clarified.
 
 
 7
 Without deciding whether the inconsistencies in James' and LeFever's statements were, in fact, exculpatory, we also reject the second element of Albertson's argument because the government's tender of the witness statements to the grand jury met the formal requirements of Sec. 50.46. By its plain language, Sec. 50.46 only imposes a duty on the government to present evidence rather than to explain evidence beneficial to the defense.
 
 III
 
 8
 Albertson contends that the court erred in denying his motion for a new trial on the basis that the government failed to correct the false testimony of its witness. He argues that LeFever falsely denied being the beneficiary of an understanding between local and federal authorities to move to reduce his federal sentence should he testify.
 
 
 9
 We review the denial of a motion for a new trial for an abuse of discretion. United States v. Endicott, 869 F.2d 452, 454 (9th Cir.1989). A conviction obtained through false evidence violates due process even when the government, although not soliciting the evidence, knowingly allows it to go uncorrected when it appears. California v. Trombetta, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984); Endicott, 869 F.2d at 455. This principle applies even when the testimony goes only to the credibility of the witness. Napue v. Illinois, 360 U.S. 264, 269-70, 79 S.Ct. 1173, 1177-78, 3 L.Ed.2d 1217 (1959).
 
 
 10
 Albertson's argument is without merit. Although we acknowledge that the prosecutor has an independent duty to correct false testimony when it appears at trial, the record does not demonstrate that the government "knowingly failed to disclose that testimony used to convict a defendant was false." Endicott, 869 F.2d at 455. Despite having prior knowledge of the understanding, Palomo and Albertson asked a single question on cross-examination which could be construed as implicating the relevant agreement. The question was posed in context of a series of questions relating to the immunity agreement LeFever had signed that morning. LeFever answered all of those questions truthfully. Neither Palomo nor Albertson brought the matter to the court's attention until their motion for a new trial. It taxes credulity to posit that the government, much less the jury, was aware that false testimony was introduced under these circumstances. See United States v. Aichele, 941 F.2d 761, 765-66 (9th Cir.1991). This conclusion gains support from the fact that the prosecutor limited his efforts to rehabilitate LeFever to the two bases of impeachment focused on by the defense, the immunity agreement and the veracity of LeFever's grand jury testimony.
 
 
 11
 We also conclude that there was "no reasonable likelihood that the false testimony could have affected the jury verdict." Endicott, 869 F.2d at 455. The defense capably impeached LeFever's credibility on the basis of the immunity agreement. The additional impeachment value gained would have served only to emphasize a fact already established on cross-examination: that LeFever received a benefit for his testimony. Moreover, because LeFever's federal sentence was to expire in a mere five weeks, the government had a powerful weapon with which to rehabilitate LeFever should the understanding have been properly raised at trial.
 
 IV
 
 12
 Relying on People v. Galloway, 100 Cal.App.3d 551, 160 Cal.Rptr. 914 (1979), Albertson contends that the court erred by allowing the prosecution to raise an inference of fabrication from the alibi witnesses' failure to come forward prior to trial.
 
 
 13
 Because Albertson failed to move for a mistrial or to otherwise object to the prosecution's closing argument, we review for plain error. See, e.g., United States v. Falsia, 24 F.2d 1339, 1342 (9th Cir.1983). Galloway is inapposite as it applies only to inferences raised from a criminal defendant's exercise of his constitutional right to remain silent. The prosecution may draw reasonable inferences from the evidence during argument. United States v. Gray, 876 F.2d 1411, 1417 (9th Cir.1989). Fabrication was a reasonable inference from the alibi witnesses' failure to come forward under the circumstances of this case.
 
 V
 
 14
 Albertson contends that the court erred by curtailing his opportunity to voir dire prospective jurors, thus impairing his exercise of peremptory challenges. Noting that five jurors who ultimately decided the case were not asked specifically about their views as to the presumption of innocence and that several jurors were removed for cause because of their disagreement with this principle, Albertson implies that there was a problem in the group voir dire conducted by the court. He also implies that the court erred in curtailing his voir dire privileges when the other attorneys were responsible for asking inappropriate questions.
 
 
 15
 We review the conduct of voir dire for an abuse of discretion. United States v. Pimentel, 654 F.2d 538, 542 (9th Cir.1981). Because the relevant Guam statutes track Fed.R.Crim.P. 24(a), we interpret the statutes as we do the Federal Rule. Cf. Guam v. Yang, 850 F.2d 507, 512 n. 8. (9th Cir.1988). The scope of voir dire is left to the broad discretion of the trial court. United States v. Heck, 499 F.2d 778, 790 (9th Cir.1974). The court's method of conducting voir dire will not be disturbed unless the procedures used are so unreasonable or devoid of constitutional purpose as to constitute an abuse of discretion. Haslam v. United States, 431 F.2d 362, 363 (9th Cir.1970).
 
 
 16
 The court curtailed Albertson's opportunity to voir dire prospective jurors only after being compelled to call several side bar conferences to admonish the attorneys for misbehavior. The offensive conduct persisted despite repeated warnings. The court acted within its broad discretion to impose control over the conduct of trial.
 
 
 17
 We specifically reject Albertson's contentions concerning the court's conduct of voir dire. As distinguished from the refusal to ask specific questions probative of juror bias, see, e.g., United States v. Baldwin, 607 F.2d 1295, 1298 (9th Cir.1979), inquiry as to general legal principles, such as the presumption of innocence, that will be covered in jury instructions is not required. See United States v. Price, 577 F.2d 1356, 1366 (9th Cir.1978), cert. denied, Mitchell v. United States, 439 U.S. 1068, 99 S.Ct. 835, 59 L.Ed.2d 33 (1979).
 
 
 18
 We also reject Albertson's contention that the court erred by curtailing of his privileges when the record indicates that the trial court grew exasperated by the behavior of the other attorneys. Cf. United States v. Vaccaro, 816 F.2d 443, 448-49 (9th Cir.1987), cert. denied, 484 U.S. 914, 108 S.Ct. 262, 98 L.Ed.2d 220 (1987) (noting that there is "some prejudice ... inherent in any joinder of defendants").
 
 VI
 
 19
 Both Palomo and Albertson contend that the lack of a transcript from the first two days of trial denied them a meaningful opportunity for appellate review. They request a remand to determine whether they can show specific prejudice within the meaning of United States v. Antoine, 906 F.2d 1379, 1381 (9th Cir.1990), cert. denied, 498 U.S. 963, 111 S.Ct. 398, 112 L.Ed.2d 407 (1990).
 
 
 20
 Although Palomo requested a transcript for the entire trial, "excluding opening and closing arguments," Rule 8(c)(2) of Appellate Procedure for the District Court of Guam provides, in pertinent part, that trial transcripts will not include voir dire unless specifically requested by the parties and authorized by the District Court. As neither Palomo nor Albertson complied with this provision, we conclude that they waived this issue. In any event, the failure to timely raise this issue before the Appellate Division also constituted a waiver. See Guam v. Reyes, 879 F.2d 646, 649 (9th Cir.1989).VII
 
 
 21
 Palomo and Albertson contend that the court erred in excluding three defense witnesses. They rely on United States v. Peters, 937 F.2d 1422, 1426 (9th Cir.1991), for the proposition that the trial court violated their Sixth Amendment rights to compulsory process.
 
 
 22
 We review de novo Sixth Amendment questions. United States v. Iglesias, 881 F.2d 1519, 1523 (9th Cir.1989), cert. denied, 493 U.S. 1088, 110 S.Ct. 1154, 107 L.Ed.2d 1057 (1990). The Sixth Amendment compulsory process clause protects the criminal defendant's right to present testimony. Taylor v. Illinois, 484 U.S. 400, 409, 108 S.Ct. 646, 653, 98 L.Ed.2d 798 (1988). The accused, however, does not "have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Id. at 410, 108 S.Ct. at 653. Moreover, "[i]f a pattern of discovery violations is explicable only on the assumption that the violations were designed to conceal a plan to present fabricated testimony, it would be entirely appropriate to exclude the tainted evidence regardless of whether other sanctions would also be merited." Id. at 414, 108 S.Ct. at 655. Under Taylor, the trial court may "insist on an explanation" and may exclude the witness' testimony should the explanation reveal that the omission was "willful and motivated by a desire to obtain a tactical advantage." Id. at 415, 108 S.Ct. at 656.
 
 
 23
 The court's exclusion of the testimony of investigator Zawalinski was based, in part, on the fact that he was not among the defense witnesses listed pursuant to the discovery stipulation entered into on the 32-90 indictment.[1] Palomo and Albertson's reliance on Peters is unwarranted on the facts of this case. In Peters, we concluded that it was improper to exclude an expert witness in the absence of an underlying discovery violation. 937 F.2d at 1426. Although no order was entered specifically covering the 170-90 indictment on which the defendants were ultimately tried, both the government and the defense, in good faith, acted in compliance with the stipulation entered into pursuant to the 32-90 indictment. The defendants assumed this stipulation was binding when asked to explain the omission at trial and expressed no opposition at oral argument.
 
 
 24
 In compliance with Taylor, the trial court asked Palomo and Albertson to explain their failure to list Zawalinski and was told that they believed that they were not required to list rebuttal witnesses. Whatever patina of plausibility this explanation may bear is severely undercut by their failure to also list alibi witness, Jesse Palomo. As such, the trial court made all of the necessary predicate findings pursuant to Taylor to support the exclusion of this witness. Accord Eckert v. Tansy, 936 F.2d 444, 446 (9th Cir.1991). There was no error.
 
 
 25
 The court did not err in excluding the testimony of David Leon Guerrero. The remoteness of Leon Guerrero's knowledge of James' propensity to lie did not render his testimony irrelevant. See Weinstein's Evidence Sec. 608, at 608-20 (1978) (the Federal Rules impose "no prerequisite conditioned upon ... recent information about the witness"). Because the defense presented two witnesses who had had more recent contact with James and had a third witness available, however, the trial court could have properly excluded Leon Guerrero pursuant to Fed.R.Evid. 403 on the basis that his testimony was, if not strictly cumulative, likely to cause undue delay.
 
 
 26
 Without deciding whether the use of the exclusion sanction against alibi witness Jesse Palomo constituted error, we conclude that any error was harmless regardless of the proper standard for harmless error review in this context. Christine Palacios, Jesse Palomo's friend, who was with him at all times necessary to establish the alibi, testified to all of the critical events. Jesse Palomo's testimony was, thus, duplicative and properly excludable under Fed.R.Evid. 403.
 
 VIII
 
 27
 Palomo contends that the court erred in denying his motion to suppress the statements he made to Officer Howard implicating himself in the murder of the Sleemans. In support of the contention that the interview constituted custodial interrogation, Palomo points out that he was considered a suspect before he appeared for the interview, that he appeared only because the police had taken his relatives to the station, and that an officer other than Howard confronted him with evidence of guilt.
 
 
 28
 We review de novo the denial of a motion to suppress. United States v. Homick, 964 F.2d 899, 902 (9th Cir.1992). Whether a person is in "custody" for purposes of Miranda is essentially a question of fact reviewed for clear error. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.1984). We employ an objective standard, asking whether a reasonable person in the interviewee's position would consider himself or herself free to leave. United States v. Bekowies, 432 F.2d 8, 12 (9th Cir.1970). "Where no findings of fact were made, this court will uphold the denial of the motion to suppress if there is a reasonable view of the evidence that will sustain it." United States v. Rabe, 848 F.2d 994, 997 (9th Cir.1988) (quotations omitted).
 
 
 29
 Palomo's argument is without merit, even on the assumption that much of his version of what occurred during the December 29 interview is true. Whether Palomo was considered a suspect before he arrived at the station is irrelevant. Stansbury v. California, --- U.S. ----, ----, 114 S.Ct. 1526, 1528-30, 128 L.Ed.2d 293 (1994) (per curiam); Bekowies, 432 F.2d at 12. Palomo's assertion that he went to the station only because his relatives had been taken there does not, without more, indicate that he did not initiate contact with the police. There is, more importantly, no dispute that Palomo left of his own accord. Although the duration of the interview and the nature of the interrogation room support Palomo's position, the remaining factors strongly support the government's contention that Palomo was not in custody. This is especially true as Palomo's version of having been confronted with evidence of guilt came out only on cross-examination, after he had presented a version consistent with the government's version on direct.
 
 IX
 
 30
 Maher contends that the Appellate Division abused its discretion in sanctioning him for the tone and content of his briefs and for a comment he made during oral argument. Maher argues that the sanctions constituted disciplinary action taken in violation of the District Court's Local Rule 115(6)(d), which provides for an evidentiary hearing prior to the imposition of discipline. Relying on United States v. Blodgett, 709 F.2d 608, 610 (9th Cir.1983), Maher also argues that his actions cannot properly be characterized as sanctionable because his arguments were well-grounded in law and fact and because the Appellate Division failed to make an anterior finding that he acted in bad faith. Finally, he contends that the Appellate Division's order was violative of due process.
 
 
 31
 We review the imposition of sanctions for an abuse of discretion. F.T.C. v. Alaska Land Leasing, Inc., 799 F.2d 507, 510 (9th Cir.1986). In addition to their statutory and Rules-based powers, district courts have the inherent power to sanction attorneys. Zambrano v. City of Tustin, 885 F.2d 1473, 1478 (9th Cir.1989).
 
 
 32
 We reject Maher's contention that the sanctions order constituted disciplinary action subject to Local Rule 115(6)(d). Maher's suggestion that we adopt the characterization of the order purportedly made in a subsequent order issued by the CNMI District Court fails to explain why an order from a different District Court is controlling. We are skeptical of this apparent application of agency principles to impute Judge Munson's characterization to the Appellate Division panel.
 
 
 33
 We, moreover, conclude that the sanctions order was a proper exercise of the Appellate Division's inherent powers. The cases cited by Maher for the proposition that the order required an anterior finding of bad faith and that due process requires an evidentiary hearing are inapposite under these circumstances. See Malhiot v. Southern California Retail Clerks Union, 735 F.2d 1133 (9th Cir.1984). The Order to Show Cause was specific and detailed. Maher was provided with adequate notice and an opportunity to respond. Maher responded in a tone and manner responsible for the issuance of the Order to Show Cause in the first instance. The requirement of an evidentiary hearing would be futile under these circumstances.
 
 
 34
 AFFIRMED.
 
 
 
 [1]
 Because we find that the trial court acted properly, under Taylor, in excluding the proffered testimony, we do not reach the other bases for the court's exclusion of this testimony. We note, however, that Zawalinski's proffer was vague and somewhat self-contradictory in important respects. According to the proffer, LeFever stated that he signed statements under duress and that he had been offered inducements by the police for his grand jury testimony. He also indicated that Palomo was not a violent person. Standing alone, this information was merely duplicitous in light of the record as a whole. LeFever was capably cross-examined on these points. Most significantly, Zawalinski proffered as follows:
 Q Did he [LeFever] state whether the statements he had made to the police and before the grand jury were true or correct?
 A He stated that they were untrue, sir.
 Q And what did he tell us when we asked what he would testify to?
 A Well, he stated that he would tell the truth, even though that--even though that Mr. Palomo was like a brother to him, but that this time he would tell the truth and that ... he would tell the truth, sir.
 Q That he would admit that all his statements to the police and the grand--
 A Were a lie, yes, sir, and they were coerced.
 Given the lack of specificity of this testimony, the court on several occasions asked Zawalinski whether he had anything to add and only ruled for the government when Zawalinski indicated that he did not. In addition, the underscored qualifying phrase seems contrary to sense in its context, unless it is taken to mean that LeFever would testify against Palomo, even though he "was like a brother to him."