UNITED STATES of America, Plaintiff-Appellant–Cross–Appellee,

v.

John BOSHELL, Defendant–Appellee-Cross–Appellant.

Nos. 90–30115, 90–30118 and 90–30119.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 10, 1991.

Decided Dec. 20, 1991.

---

Aaron L. Lowe, Spokane, Wash., for defendant-appellee-cross-appellant, John Boshell.

Earl A. Hicks, Asst. U.S. Atty., Spokane, Washington, for plaintiff-appellant-cross-appellee, U.S. of America.

Thomas Hillier, Federal Public Defenders, Seattle, Wash., for the amicus curiae Federal defendants of the Ninth Circuit on behalf of defendant-appellee-cross-appellant, John Boshell.

Before D.W. NELSON, NOONAN, and T.G. NELSON, Circuit Judges.

D.W. NELSON, Circuit Judge:

Boshell appeals from his conviction for conspiracy to knowingly and intentionally possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 846, and 18 U.S.C. § 2. Boshell alleges the government failed to timely produce discovery in compliance with the Jencks Act, 18 U.S.C. § 3500, and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The government cross-appeals from the district court's downward departure from the Sentencing Guidelines based on Boshell's character and the disparity between the sentence he would have received under the

guidelines and that of his co-defendants who pled guilty to pre-guidelines offenses. *See United States v. Boshell,* 728 F.Supp. 632 (E.D.Wash.1990).

The district court's decisions on the Jencks Act and *Brady* materials are affirmed. Boshell's sentence is vacated and remanded for an articulation of reasons justifying any departure from the sentencing guidelines.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The evidence at trial established that Boshell, a former Los Angeles County Sheriff, was involved in a multi-state cocaine distribution network. Boshell and twenty-two other defendants were indicted. As a result of guilty pleas and a dismissal, only four defendants actually went to trial. One defendant, Foss, was granted a motion for judgment of acquittal. Boshell, Fischer and Arnone were found guilty of conspiracy to distribute cocaine.

The district court sentenced Boshell to 40 months imprisonment with five years supervised release. The government filed its notice of appeal on March 19, 1990, and defendant's notice of appeal was filed on March 22, 1990. This court has jurisdiction over the appeal under 28 U.S.C. §§ 1291, 1294(1) and 18 U.S.C. § 3742(b).

## II. DISCUSSION

1. *Compliance with the Jencks Act*

[1] Appellant contends that the government failed to turn over materials to which the defense was entitled under the Jencks Act in a timely fashion. 18 U.S.C. § 3500(b), (c) and (d). We review a district court's denial of a motion to produce a witness' statement pursuant to the Jencks Act for abuse of discretion. *United States v. Cowley,* 720 F.2d 1037, 1040 n. 1 (9th Cir.1983), *cert. denied,* 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984). We review for clear error factual findings underlying the district court's ruling. *United States v. Goldberg,* 582 F.2d 483, 486 (9th Cir.1978).

The Jencks Act requires that after a government witness has testified on direct, the government must give the defendant any statement, as defined by the Act, in the government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500 (1976); *United States v. Loyd,* 743 F.2d 1555, 1565 (11th Cir.1984). 18 U.S.C. § 3500(e) defines, in relevant part, a "statement" as: (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness' oral statement.

■ The district court must first consider whether the challenged materials are a statement within the meaning of § 3500(e)(1). A verbal acknowledgment that the notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under § 3500(e)(1). *Campbell v. United States,* 373 U.S. 487, 490–92, 83 S.Ct. 1356, 1359–60, 10 L.Ed.2d 501 (1963).

■ Appellant alleges that witness Barbalinardo met with government agents on June 22, 1988 and made a statement. He alleges that four agents took notes of that conversation and that the government violated the Jencks Act by failing to provide the notes. However, Barbalinardo testified repeatedly that he first met with the government on July 28, 1988. Without any evidence to contradict this testimony, Boshell's challenge based on this alleged earlier meeting is without substance.

■ Appellant also challenges the failure to produce in a timely fashion the rough notes of the July 28, 1988 interview between Barbalinardo and the government. The district court ruled that Agent Davidson's rough notes of the July 28 interview were not his or Barbalinardo's "statements." Agent Davidson's notes, consisting of two pages listing some names, were very cryptic. Barbalinardo testified that the agent did not take notes of everything he said. Agent Davidson testified that his primary purpose for taking notes was to record names of individuals who might be relevant to the investigation. The district court was correct in ruling that the notes were not a substantially verbatim recital of

Barbalinardo's oral statement, nor were they seen, signed or adopted by Barbalinardo, nor were they a complete recording of Davidson's observations.

■ Appellant also challenges the failure to provide notes of the interview between Barbalinardo and Agent Davidson on August 19–20, 1988. The district court found that the notes were not a substantially verbatim recital. Although the notes are lengthy, they are cryptic, listing names without comment, as well as scattered events and dates. The district court did not commit clear error in deciding that this was not a substantially verbatim recording of the witness's statement.

■ It appears, however, that on August 21, 1988, Agent Davidson went over his notes with Barbalinardo present, and as Barbalinardo confirmed certain facts, Agent Davidson dictated them into a tape recorder. Before trial, the government turned over to the defense a typed version of that taped statement.

If notes are occasionally read back to a witness to see whether or not the government agent correctly understood what he was saying, that act constitutes adoption by the witness. *Goldberg v. United States*, 425 U.S. 94, 98, 100–01, 96 S.Ct. 1338, 1343–44, 47 L.Ed.2d 603 (1976). Barbalinardo's confirmation of the facts in the notes before they were dictated on tape makes the notes and the tape producable under Jencks.

■ Before reversal is required, appellant must prove that more than harmless error occurred because of the failure to timely produce these materials. Without any suggestion that the notes would have helped appellant overcome the hard evidence the district court used to convict him, we cannot reverse. *United States v. Pisello*, 877 F.2d 762, 768 (9th Cir.1989), citing *United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir.1986), *cert. denied*, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987); *United States v. Wallace*, 848 F.2d 1464, 1471 (9th Cir.1988) (Jencks Act violations normally do not implicate constitutional rights and do not merit reversal when more likely than not harmless). Appellant does not argue that timely production of these notes would have made a difference to the decision to convict him. If any error occurred, it was harmless.

■ Appellant makes a similar argument with regard to the March 7 and 8 debriefing of witness Jipner. The agent took notes, recited them to the witness and then dictated a statement onto a tape cassette. The government provided appellants with a typed statement made from the tape, but did not produce the tape or the rough notes that formed the basis of that statement. Though the witness adopted the notes and the tape by approving their contents, appellant has made no showing that more than harmless error occurred because of the failure to produce this material.

Appellant also complains that "discovery and Jencks Act materials" of a series of meetings between Barbalinardo and co-defendant Keuter regarding a controlled buy of cocaine were not turned over until after Barbalinardo's cross-examination began. Appellant does not specify what the Jencks Act material was, nor does he argue that it would have made a difference to the determination of his guilt, innocence or sentencing. Without more specific allegations and proof, appellant's Jencks Act claim with regard to these meetings lacks merit.

■ In determining that witnesses Hicks' and Wolkey's notes were not producible, the district court found that the notes were neither read to the witnesses nor adopted by them. Without such a showing, the notes are not statements subject to production under Jencks. *Goldberg*, 425 U.S. at 110, n. 19, 96 S.Ct. at 1348, n. 19. Defendant has not shown that the court's determination was clearly erroneous.

Appellant also argues that "other Jencks materials regarding Mr. Marlton" were not provided. He apparently seeks information regarding a 1986 debriefing by unknown agents on a tax offense which the government claims is unrelated. Assistant United States Attorney Hicks informed the court that the government did not possess this information. Even if this information were in the government's possession and were relevant, without a showing of why failure to produce this evidence is more than harmless error, appellant fails in his contention

that his conviction should have been reversed.

■ Finally, appellant contends that "rough factual interview notes which were taken by Assistant United States Attorneys or their law clerks in this matter" were not turned over. The brief provides no detail concerning who was interviewed during these sessions or why those notes were material. Nor does it show why the failure to provide these notes was more than harmless error. Appellant must show prejudice to be entitled to reversal. *United States v. Pisello,* 877 F.2d at 768; *United States v. Wallace,* 848 F.2d at 1471. The district court's Jencks Act rulings are affirmed.

### 2. *Non–Disclosure of Brady Material*

■ *Brady v. Maryland* requires the prosecution to disclose evidence that is both favorable to the accused and material either to guilt or punishment. 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). Impeachment as well as exculpatory evidence falls within *Brady's* definition of evidence favorable to the accused. *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Such evidence is material, however, only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.* at 678, 105 S.Ct. at 3381–82. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id.*

Appellant argues that "[m]any of the approximately 300 documents provided during trial rise to the level of *Brady* materials such as Mr. Barbalanardo's diary." Barbalanardo's diary, which the government asked him to keep after its July 28, 1988 meeting with him, is the only specific evidence appellant contends is Brady material. Appellant fails to show how the result of the trial would have been different if this diary had been disclosed earlier. *See United States v. Anderson,* 813 F.2d 1450, 1458–59 (9th Cir.1987). Prejudice is not established by the mere possibility that undisclosed information might have helped.

*United States v. Agurs,* 427 U.S. 97, 109–10, 96 S.Ct. 2392, 2400–01, 49 L.Ed.2d 342 (1976). The district court's rulings on the challenged *Brady* materials are affirmed.

### 3. *Departure from Sentencing Guidelines*

#### A. *Discretion to Depart for Background Characteristics*

On cross-appeal, the government appeals the district court's decision to depart from the Sentencing Guidelines based upon defendant's background, character and conduct. *See Boshell,* 728 F.Supp. at 633–36. We review interpretation of the guidelines de novo. *United States v. Duarte,* 901 F.2d 1498, 1500 (9th Cir.1990).

The district court found a conflict between 18 U.S.C. § 3661, on the one hand, which provides that no limit shall be placed on information concerning character, background and conduct of the defendant in determining sentence, and 28 U.S.C. §§ 994(d) and 994(e), and U.S.S.G. § 5H1.1–5H1.6, on the other hand. Section 5H1.1–6 provides that age, education, vocational skills, previous employment record, family ties and community ties are "not ordinarily relevant in determining whether a sentence should be *outside* the guidelines." (emphasis added). The district court resolved this conflict by holding that 18 U.S.C. § 3661 controls. The district judge departed downward in sentencing Boshell, citing the need for "honesty, uniformity and proportionality in sentencing decisions," and Boshell's "unique personal attributes" as a former Los Angeles County Sheriff who received citations for heroism and whose "involvement in the conspiracy commenced, not uncoincidentally [sic], with the deterioration of his marriage." The guidelines range for Boshell's offense was 151 to 188 months. Boshell was sentenced to 40 months.

■ The statutes and Sentencing Guidelines sections at issue may be reconciled by limiting consideration of offender characteristics to adjustments *within* the guidelines range, and allowing departures from this range for offender characteristics

only in extraordinary circumstances. *See Duarte*, 901 F.2d at 1500–01. Offender characteristics should not ordinarily influence downward or upward *"departures* from the appropriate Sentencing Guideline range." *Id.* at 1500. Only in extraordinary circumstances may a court rely on one of the six factors listed in section 5H1.1–6 to depart from the guidelines range. *United States v. Mondello*, 927 F.2d 1463, 1470 (9th Cir.1991).[1] *See, e.g., United States v. Doering*, 909 F.2d 392, 394 (9th Cir.1990) (section 5H1.3 makes a defendant's mental condition relevant only in extraordinary case).

### B. *Departure for Defendant's Character and Job History*

We now evaluate whether the district judge adequately identified extraordinary circumstances justifying departure based on Boshell's background and job history. *Mondello*, 927 F.2d at 1470. We review departures according to a three-step process:

1. We determine whether the district court had legal authority to depart;

2. We review for clear error factual findings supporting the existence of the identified circumstance;

3. We determine whether the extent of departure from the applicable guideline range was "unreasonable" within the meaning of 18 U.S.C. § 3742(e)(3) and (f)(2), which define the standard of appellate review.

*United States v. Lira–Barraza*, 941 F.2d 745, 746–47 (9th Cir.1991) (en banc). The district court should state its reasons for the extent of the departure "founded on the structure, standards and policies of the Act [Sentencing Reform Act of 1984, 18 U.S.C. § 3551 et seq. (1988)] and the Guidelines." *Lira–Barraza*, 941 F.2d at 760.

At the sentencing hearing on January 4, 1990, the district judge weighed the "pro's and con's": Boshell's age (30), good family background, lack of a criminal record, "lifelong ambition to be in law enforcement" and commendations for "acting above and beyond the call of duty." After commenting that it is "troublesome that a police officer got involved as a courier by accepting money to transport some cash allegedly for a real estate deal," the court stated that "whether there should have been a consideration here of breach of a public trust, I guess, is not the real issue, but it is a troublesome thing."

Although it is unclear how much of the departure was based on Boshell's job history or other background characteristics, they were clearly factors that weighed heavily in the judge's decision to depart downward by 111 months. As stated above, the district court is vested with the authority to depart based upon these characteristics only when extraordinary circumstances are present. *Mondello*, 927 F.2d at 1470.

The case is remanded for an articulation of the reasons for departure and the underlying factual basis justifying that departure. If the court concludes no extraordinary circumstances justify departure, it still has the discretion to depart if it finds Boshell's criminal conduct was an aberration. U.S.S.G. Ch. 1, Pt. A, Intro. § 4(d); *United States v. Takai*, 941 F.2d 738, 743 (9th Cir.1991).

We also note that the district court referred to the possibility of an upward departure based upon abuse of trust, but did not specifically rule on that issue. On remand, the court has discretion to depart or not based upon this factor. *Lira–Barraza*, 941 F.2d at 746–47; *United States v. Morales*, 898 F.2d 99, 101 (9th Cir.1990). However, we feel that the district court ought to take into consideration the fact that Boshell was a police officer entrusted with protecting the public when he began acting as a courier. Due consideration should be given to an upward adjustment based on abuse of trust.

### C. *Departure for Lack of Proportionality With Co-Defendants*

The cocaine conspiracy Boshell was convicted of involved acts completed before the Sentencing Guidelines' effective date, as well as acts completed after the guidelines went into effect. Unlike his confederates, Boshell was not offered a bargain that would have allowed him to plead

---

**1.** These factors are: age, education and vocational skills, mental and emotional conditions, physical condition, previous employment, family and community ties.

to pre-sentencing guidelines offenses only. *Boshell,* 728 F.Supp. at 641. Boshell stood trial on charges stemming from pre- and post-guidelines offenses. Because the guidelines imposed stiffer penalties, the district court observed that Boshell would have received a higher sentence than co-defendants of equal culpability who were sentenced for crimes committed before the guidelines became operative. The disparity between the sentences grew because the district court imposed a light sentence on many of Boshell's co-defendants against the government's recommendation.

We first examine whether or not the district court had authority to depart based on the disparate sentencing schemes used for the co-defendants. The district court may not depart from the applicable guideline range unless it identifies an aggravating circumstance the U.S. Sentencing Guidelines Commission ("the Commission") did not adequately take into account. *Lira–Barraza,* 941 F.2d at 746.

We have concluded that the need to avoid unwarranted sentencing disparities among co-defendants involved in the same criminal activity has long been considered a legitimate sentencing concern. *United States v. Capriola,* 537 F.2d 319, 320–21 (9th Cir. 1976). In *United States v. Ray,* 930 F.2d 1368, 1372–73 (9th Cir.1990), we held that where unusual circumstances are present, departure for equalization of co-defendants' sentences may be warranted. Ray's co-defendants were sentenced during the brief period when *Gubiensio–Ortiz v. Kanahele,* 857 F.2d 1245 (9th Cir.1988), *rev'd sub nom. United States v. Chavez–Sanchez,* 488 U.S. 1036, 109 S.Ct. 859, 102 L.Ed.2d 984 (1989), holding that the sentencing guidelines were unconstitutional, allowed the district court to apply pre-guidelines law. Ray, on the other hand, was sentenced after *United States v. Mistretta,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), reinstated the guidelines. We held that "in the unique situation where one defendant is sentenced under the Guidelines while the others are sentenced under a different legal regime, the district court may find 'highly unusual' circumstances that support a departure." *Ray,* 930 F.2d at 1372 n. 7. However, rigid equalization of co-defendants' sentences is not required. *United States v. Enriquez–Munoz,* 906 F.2d 1356, 1358–60 (9th Cir. 1990).

Boshell's may be such an unusual case. Boshell's case falls in a class of cases likely to arise during the first few years following the guidelines' enactment. Because the conspiracy involves both pre- and post-guidelines offenses, those who were offered a plea to the pre-guidelines offenses were sentenced under laws giving the district judge more discretion. Thus, Boshell faced not only the plea bargain disparity which would require a reasoned explanation under *Capriola* to assure that he was not penalized for exercising his right to go to trial, but also disparate sentencing schemes similar to those faced in *Ray.*

Next, we examine the factual findings underlying the district court's decision to depart. The district court compared the sentence Boshell would have received under the guidelines, 12 years, 5 months to 15 years, 8 months, to those received by his co-defendants:

| Name | Sentence |
| --- | --- |
| Vaughn Jipner | Probation |
| Leonard T. Swirda | 11 years |
| Joseph D. Barbalinardo | Not yet sentenced * |
| Joseph E. Mitchell | 11 years & 6 months |
| Leslie J. Anderson | Probation w/90 days confinement |
| Howard Hanaway | 5 years (mandatory minimum) |
| Paul Sweeney | 5 years (mandatory minimum) |
| Steven P. Marlton | Not yet sentenced * |
| Renae Legard | Voluntary dismissal |
| Robert L. Knipple | Probation, $1,000 fine |
| William C. Balck | Not yet sentenced * |
| Donale M. Foss | Acquitted at trial |
| Jeffrey J. Stack | Not yet sentenced * |

| Name | Sentence |
|---|---|
| Wyatt Stanley | Probation |
| Michael S. Vandenberg | Probation, $500 fine |
| Derek Dean Bos | Probation |
| George W. Sharp | Probation, $1,000 fine |
| Clarence Watson | Pretrial diversion |
| Betty M. Watson | Pretrial diversion |
| Helaine Swirda | Probation |
| Frank Arnone | Not yet sentenced * |
| Robert Fischer | 12 years & 11 months |
| Estanislao Kreutzer | 2 years |
| Harut Kirakossian | Not returned to this district |
| Laurie Innis | Granted pocket immunity |
| Michael Innis | Granted pocket immunity |

\* Not sentenced as of the time of Boshell's sentencing.

*Boshell*, 728 F.Supp. at 639. The district court noted that some individuals, such as Jipner, Barbalinardo and the Innises cooperated extensively with the government and received lower sentences accordingly. The district court observed, however, that "kingpins of the organization such as Swirda, Mitchell, Sweeney and Hanaway each received less time, without any cooperation, than is being urged for Boshell." *Id.* at 640. The district court concluded that if the government's sentencing recommendation were followed, Boshell, "an 'average' player—would actually serve between *double* and *triple* the time imposed on the non-cooperating kingpins." *Id.*

Without any departures, Boshell's minimum sentence would be slightly higher than Swirda's and Mitchell's, but more than twice that of Hanaway and Sweeney. Although the district court did not identify any co-defendant whose role was comparable to Boshell's, it did adequately point to the disparities between the proposed sentence for Boshell as compared to the ringleaders.

However, the district court failed to state how much of a departure is warranted based on the disparity with the co-defendants' sentences. We cannot tell how much of the departure was based on impermissible character considerations and how much was based upon the desire to make the sentences more proportionate in the face of different punishment schemes. *See United States v. Nuno–Para*, 877 F.2d 1409, 1414 (9th Cir.1989) (sentence invalid where it is impossible to tell how much of the departure was based upon consideration of improper factors). We therefore remand for a statement explaining how much, if any, departure is justified based on the desire to equalize the co-defendant's sentences.

## III. CONCLUSION

The district court's decisions regarding the Jencks Act challenges and the *Brady* challenges are affirmed. Boshell's sentence is vacated and remanded for a statement of which, if any, extraordinary circumstances justify departure based on character, and a statement of reasons explaining the extent of that departure. We also remand to determine how much, if any, departure, was based on the desire to equalize Boshell's sentences with his co-defendants who were sentenced under a different punishment scheme.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.