5 F.3d 541
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Cesar Armando ECHEVERRIA, Defendant-Appellant.
 No. 92-10071.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 11, 1993.*
Decided Sept. 1, 1993.
 
 Appeal from the United States District Court for the Northern District of California, No. CR-91-0127 CAL; Charles A. Legge, District Judge, Presiding.
 N.D.Cal.
 AFFIRMED.
 Before: POOLE, BOOCHEVER and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Appellant Cesar Echeverria appeals his conviction for conspiracy to possess and distribute cocaine in violation of 21 U.S.C. Secs. 846 and 963 as well as importation of cocaine, in violation of 21 U.S.C. Sec. 952. Echeverria argues that the district court abused its discretion in refusing to allow him to discover information and present evidence relevant to his theory of defense at trial. We reject his arguments and affirm his conviction.
 
 I.
 
 3
 Based on information obtained from a stowaway aboard the M/V Flag Adrienne, a ship that sailed from Cartagena, Colombia and docked in Richmond, California, the United States Customs Service (USCS) discovered that the Adrienne carried cocaine that was to be unloaded in Richmond. The contact aboard the ship who was to arrange the transfer of the cocaine was subsequently arrested.
 
 
 4
 On March 7, 1991, USCS Special Agent Tyler Morgan instructed Immigration and Naturalization Service (INS) Special Agent Ramon Jaime to place an undercover call to the telephone number obtained from the stowaway. Morgan recorded these conversations. Impersonating the contact, Jaime spoke to Juan Guttierez and arranged to transfer the cocaine. Guttierez provided Jaime with a pager number and a code that would enable him to contact "Manolo," who would pick up the cocaine.
 
 
 5
 Jaime then contacted Manolo, who was later identified as Echeverria. Echeverria informed Jaime that he would pick up the cocaine from the Adrienne. On the evening of March 7, USCS agents observed Echeverria drive a green station wagon two or three times past the pier area where the Adrienne was docked. On the morning of March 8, Jaime called Echeverria's pager, and Echeverria called back and said that he was in Richmond. Jaime and Echeverria agreed that Echeverria would call at noon and that Jaime would decide on a meeting place. Echeverria was observed driving a white Toyota around the pier area at approximately 10:00 a.m. Echeverria had left his green station wagon parked down the road from the pier.
 
 
 6
 At noon and again at 1:00 p.m., Echeverria called Jaime from a pay phone located near the Adrienne. Echeverria told Jaime that he was driving a black Cadillac and that he would be waiting at the front gate of the pier. Echeverria later said that he would be waiting at front gate of the pier in a small brown car. Echeverria was actually still driving the white Toyota.
 
 
 7
 Jaime met Echeverria and led him into the pier. Jaime directed Echeverria to a place on the pier where a bag of cocaine was located. Echeverria gave Jaime $2,000, indicating that the rest of the promised $10,000 would be given to him later. After Echeverria picked up the 12 kilograms of cocaine, he was arrested. The events on the pier were videotaped, and the videotape was presented as evidence at trial.
 
 
 8
 After his arrest, Echeverria waived his Miranda rights and admitted that Gutierrez had instructed him to meet Jaime at the Adrienne and pick up twelve kilograms in exchange for $10,000. Echeverria further stated that he was to be paid $5,000 for his work. This confession was also introduced at trial.
 
 
 9
 At trial, Echeverria's defense was that he had no knowledge that he was involved in a cocaine transaction. Echeverria explained that he came to the pier to meet a friend of Guttierez' who was having immigration problems and that Guttierez requested him to give the friend $2,000 for immigration bail. Echeverria also attempted to give innocent explanations for all of the incriminating evidence against him.
 
 
 10
 Echeverria's defense theory was that the twelve kilograms seized by the USCS during his arrest were only a decoy for an additional 100 kilograms onboard the Adrienne and that he was a dupe who was used to determine if law enforcement officials were aware of the planned larger cocaine transaction. Echeverria further contended that Guttierez had always intended to send someone from Miami to pick up the cocaine and that Echeverria was not contacted until it was clear that the stowaway had been arrested. In support of his theory, Echeverria offered the testimony of a person who was arrested attempting to unload some of the 100 kilograms of cocaine off of the Adrienne at the Los Angeles Harbor, the Adrienne's next destination. The district court ruled that the proposed testimony was inadmissible, finding that even if the person had been hired to recover the bags of cocaine from the Adrienne, it was not relevant to Echeverria's mental state and intent when he met Jaime.
 
 II.
 
 11
 Echeverria argues that the district court erred in denying his discovery motion. Discovery rulings are reviewed for an abuse of discretion. See United States v. Boshell, 952 F.2d 1101, 1104 (9th Cir.1991); United States v. Sanchez, 908 F.2d 1443, 1451 (9th Cir.1990). Specifically, however, Echeverria argues that his rights under Brady v. Maryland, 373 U.S. 83 (1963), were violated by the denial of his discovery motion. A prosecutor's duty to produce evidence under Brady is normally[1] reviewed de novo. United States v. Monroe, 943 F.2d 1007, 1012 (9th Cir.1991), cert. denied, 112 S.Ct. 1585 (1992).
 
 
 12
 Echeverria further argues that the district court erred in excluding his proposed witness. A determination to admit or exclude evidence is reviewed for an abuse of discretion. United States v. Crespo de Llano, 838 F.2d 1006, 1018 (9th Cir.1987).
 
 
 13
 Additionally, Echeverria must show that he was prejudiced by the denial of discovery or the exclusion of evidence. See Federal Rule of Criminal Procedure 52(a) (requiring that an error must affect a defendant's substantial rights); Boshell, 952 F.2d at 1106; United States v. Feldman, 788 F.2d 544, 555 (9th Cir.1986), cert. denied, 479 U.S. 1067 (1987) (citation omitted).
 
 III.
 
 14
 Echeverria requested evidence pertaining to the investigation of cocaine on the Adrienne and argues on appeal that such disclosure is required under Brady. In Brady the Supreme Court held that a defendant has a due process right to favorable evidence in the prosecution's possession that is material to guilt or punishment. 373 U.S. at 87; United States v. Agurs, 427 U.S. 97, 106 (1976). This court has previously determined that information tending to support a defendant's version of the facts is Brady material. See United States v. Hibler, 463 F.2d 455, 460 (9th Cir.1972). The prosecutor is under a continuing duty to make any information that it or the district court deems to be Brady material available. See United States v. Bryan, 868 F.2d 1032, 1034 (9th Cir.), cert. denied, 110 S.Ct. 167 (1989).
 
 
 15
 But the district court did not hold that information relevant to Echeverria's theory of defense was not Brady material; it determined that such evidence would be discoverable and ordered the government to review its files to determine if any existed. It denied the motion as overbroad. "There is no general right to discovery in a criminal case, and Brady did not create one." Weathersford v. Bursey, 429 U.S. 545, 559 (1977). The thrust of Brady is to ensure that exculpatory evidence is revealed to the defense, not to allow the defense to see all the incriminating information the government may have on the defendant. See 373 U.S. at 87-88. Because Echeverria requested "[a]ll evidence pertaining to the investigation of cocaine on the Adrienne," the district court did not err in denying his motion as overbroad.
 
 
 16
 While Echeverria still had a right to any Brady material in the government's possession notwithstanding the denial of his motion, the government turned over the information that it determined should have been disclosed under Brady. Echeverria argues in the abstract that the government failed to comply with its duty and the district court's order by not disclosing additional information. However, "[u]nless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision to disclose is final." Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987). Inasmuch as Echeverria points to no specific favorable information that was withheld, there is no Brady violation.
 
 IV.
 
 17
 Echeverria claims that the district court erred in excluding testimony relevant to his theory of defense. However, even if the district court erred in excluding relevant testimony, the error was harmless. The exclusion of evidence is harmless unless it probably affected the verdict. United States v. Palmer, No. 91-30291, slip op. 8823, 8833 (9th Cir. August 16, 1993). The evidence at trial contradicted Echeverria's claim that he was an innocent dupe. The government's surveillance of Echeverria and the Adrienne provided evidence which clearly showed that Echeverria was taking part in a drug transaction. Furthermore, Echeverria confessed to taking part in the cocaine transaction. Finally, Echeverria's trial testimony failed to explain his actions consistent with innocence. Even if the jury would have accepted the testimony Echeverria sought to introduce, it probably would not have found affected the verdict.
 
 
 18
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 There is no singular standard of review for Brady issues. In situations similar to this case, review has been de novo. See United States v. Lehman, 792 F.2d 899, 901 (9th Cir.), cert denied, 479 U.S. 868 (1986); United States v. Kennedy, 890 F.2d 1056, 1058 (9th Cir.1989), cert. denied, 494 U.S. 1008 (1990); United States v. Pisello, 877 F.2d 762, 764 (9th Cir.1989); accord United States v. Monroe, 943 F.2d 1007, 1012 (9th Cir.1991) ("In general, a district court's ruling on the prosecution's duty to produce evidence under Brady is reviewed de novo."). At other times, the court has reviewed for clear error, see United States v. Strifler, 851 F.2d 1197, 1201-02 (9th Cir.1988), cert. denied, 489 U.S. 1032 (1989), and explained that this standard is appropriate where some, but not all, of a document has been produced. United States v. Monroe, 943 F.2d 1007, 1012 (9th Cir.1991). Monroe also suggests that there might be occasions where review for an abuse of discretion would be appropriate. Id. at 1012 n. 3