56 F.3d 74
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Marizu Jite OGBUEHI, Defendant-Appellant.
 No. 94-50442.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 5, 1995.*
Decided May 31, 1995.
 
 1
 Before BEEZER and TROTT, Circuit Judges, and SHUBB,** District Judge
 
 
 2
 MEMORANDUM***
 
 
 3
 Marizu Ogbuehi appeals, for a second time, his conviction on four counts of heroin smuggling in violation of 21 U.S.C. Secs. 841(a)(1), 846, 952, and 960. In this appeal he challenges the district court's determination (1) that the government's refusal to turn over interview notes of a key witness was harmless error, and (2) that there was no Giglio violation regarding the witness's temporary and erroneous belief that she may have been HIV-positive at the time she negotiated her plea agreement with prosecutors. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 I.
 Jencks Act
 
 4
 On November 22, 1991, Marizu Ogbuehi and three associates were arrested at the San Ysidro border crossing. The three associates were carrying heroin. Ogbuehi was not. One of the three, Rosalie Williams, immediately implicated Ogbuehi as the man who had recruited her to smuggle the heroin. In October 1992, largely on the strength of Williams' testimony, Ogbuehi was tried and convicted.
 
 
 5
 Prior to trial, Rosalie Williams gave three statements implicating Ogbuehi. On November 23, 1991, the day after she was arrested, she signed a statement indicating that Ogbuehi was the mastermind behind the smuggling operation. She was subsequently interviewed by prosecutors on February 25, 1992 and October 16, 1992, when she repeated her allegations. Prosecutors kept notes of both interviews.
 
 
 6
 Counsel for Ogbuehi requested copies of the notes both before and during trial. The government opposed the requests on the grounds that the notes were not statements for purposes of the Jencks Act. In his first appeal, reported at 18 F.3d 807 (9th Cir. 1994), Ogbuehi successfully argued that the district court should have reviewed the interview notes in camera before deciding whether they should be turned over to the defense. The court remanded the case to the district court with instructions to review the notes to "determine whether the notes were 'statements,' or, assuming they were, whether the failure to produce them was harmless error." United States v. Ogbuehi, 18 F.3d 807, 811 (9th Cir. 1994). In regard to whether the failure to produce was "harmless error" the district court was instructed as follows:
 
 
 7
 Though "the harmless-error doctrine must be strictly applied in Jencks Act cases," Goldberg, 425 U.S at 111 n. 21, a new trial is required "only if the court concludes that a producible statement existed and that substantial rights of appellant were affected by the failure to make that statement available for his use in cross-examination."
 
 
 8
 Id. quoting United States v. Johnson, 521 F.2d 1318, 1320 (9th Cir. 1975).
 
 
 9
 On remand, the district court assumed without deciding that all the statements were producible as Jencks Act materials, but found that the failure to make them available to the defense did not affect any substantial rights. Pursuant to this court's instructions, the district court then entered a new judgment of conviction.
 
 
 10
 This court reviews a district court's denial of a motion to produce Jencks Act materials for abuse of discretion. United States v. Boshell, 952 F.2d 1101, 1104 (9th Cir. 1991). Factual findings underlying the ruling are reviewed for clear error. Id.
 
 
 11
 We find no abuse of discretion. In his present challenge, Ogbuehi points to twenty-eight alleged inconsistencies between the notes and Williams' testimony at trial. Review of the twenty-eight alleged inconsistencies reveals that most are not inconsistent at all. Those that might conceivably be viewed as inconsistent are only so because of minor discrepancies and varying degrees of detail between the approximately twenty-three pages of note fragments,[1] and the more than 240 pages of trial testimony. In short, all of the alleged inconsistencies are either consistent, trivial, or inconsequential. None rises to the level that might justify overturning the trial judge's determination that no substantial rights were infringed upon.
 
 
 12
 Several other factors support the district court's conclusion. First, defense counsel had access to substantial information about Williams, including statements she had made to investigators and to her probation officer. The defense also had an opportunity to interview her at length before trial. It was well within the trial court's discretion to determine that the interview notes would not have materially added to the information already available to the defense for impeachment purposes. Second, according to the trial judge, Williams was an extremely credible witness whose testimony was supported by other evidence produced at trial. In light of this, the trial court did not abuse its discretion in finding that the impact of her testimony would have been unaffected by use of the interview notes in cross-examination.
 
 II.
 Giglio Material
 
 13
 The district court's refusal to order the prosecutors to turn over material under Giglio v. United States, 405 U.S. 150 (1972) is reviewed de novo. United States v. Monroe, 943 F.2d 1007, 1012 (9th Cir. 1991).
 
 
 14
 Under Brady v. Maryland, 373 U.S. 83 (1963), "failure of the prosecutor to disclose evidence that is both favorable to the accused and material to either guilt or punishment violates due process." United States v. Shaffer, 789 F.2d 682, 687 (9th Cir. 1986). This includes materials going to the credibility of a government witness. Id.; Giglio v. United States, 405 U.S. 150, 154 (1972). Evidence is material if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). Two questions are thus presented: (1) did the prosecution withhold evidence relevant to the credibility of a government witness, and (2) if so, is there a reasonable probability that disclosure would have changed the outcome of the trial. Giglio, 405 U.S. at 154.
 
 
 15
 Sometime between her arrest on November 22, 1991, and her interview with prosecutors in February 1992, Williams received an indeterminate result on an HIV test. The February interview notes contain the following entry: "HIV-positive defendant can argue for DOW. departure." This note apparently refers to a conditional term of Williams' agreement with prosecutors in the event she did turn out to be HIV-positive. This agreement was incorporated into the terms of Williams' plea bargain. Two subsequent test results, received months before trial, showed that, in fact, Williams was not HIV-positive.
 
 
 16
 The district court correctly determined that the February interview notes did not constitute Giglio material. The critical information--that in exchange for her testimony Williams would be free to argue for a downward departure in the event that she did turn out to be HIV-positive--was not withheld from defense counsel. According to the representations made by government counsel before the district court in the hearing after remand, defense counsel was expressly invited to review the plea agreement, which includes the terms at issue, on October 14, 1992, about a week before trial, but declined to do so. These representations were not disputed by defense counsel either in the district court or on this appeal.
 
 
 17
 Even if the government had withheld the information, there is no reasonable probability that its disclosure would have changed the outcome of the trial. The record indicates that defense counsel was well aware that Williams had been under the mistaken impression that she may have been HIV-positive during the period when she was negotiating her plea agreement with prosecutors. In fact, he made reference to this fact in his opening statement when he told the jury:
 
 
 18
 We intend to inquire into her [Williams'] state of mind and you will learn the following:
 
 
 19
 That Rosalie Williams does not like being in custody; that it is not pleasant for her; that she has suffered in the past from mental instability; that she has a serious physical ailment which makes it very important for her to be able to get out of custody as soon as possible ....
 
 
 20
 RT1 at 129-30 (emphasis added). Despite recognizing both Williams' mistaken belief, and the effect that this might have had on her decision to testify, defense counsel made no efforts to review the plea agreement, and elected not to cross-examine Williams on her HIV status, or to otherwise introduce evidence on this point.
 
 
 21
 Finally, the fact remains that Williams was not HIV-positive, and she knew this long before she testified at trial. Thus, the term in her plea agreement allowing her to argue for a health-related downward departure was worthless to her when she testified.
 
 
 22
 The judgment of the district court is therefore AFFIRMED.
 
 
 
 *
 The panel unanimously agrees that this case is appropriate for submission without oral argument. Fed. R. App. P. 34(a); 9th Cir. R. 34-4
 
 
 **
 Honorable William B. Shubb, United States District Judge for the Eastern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The October 16 notes consist of about 11 typed pages, and the February 25 notes consist of 12 handwritten pages