### UNITED STATES of America, Plaintiff,

v.

### Agustin CONTRERAS–GOMEZ, Defendant.

### Nos. CR–95–2065–AAM, CR–97–2086–RHW.

United States District Court, E.D. Washington.

Jan. 8, 1998.

Gregory M. Shogren, Asst. U.S. Atty., Yakima, WA, for Plaintiff.

Thomas Monaghan, Asst. Fed. Defender, Yakima, WA, for Defendant.

## ORDER GRANTING DOWNWARD DEPARTURE ON THE BASIS OF U.S.S.G. § 5K2.0

WHALEY, District Judge.

### INTRODUCTION

On December 23, 1997, Defendant came before the Court on sentencing in cause number CR–97–2086–RHW and on a report of supervised release violation in cause number CR–95–2065–AAM. At the hearing, Assistant United States Attorney Gregory Shogren appeared on behalf of the Government. Defendant was present and represented by Assistant Federal Defender Thomas Monaghan.

On December 18, 1997, the Court issued an order advising the parties that it intended to consider a downward departure pursuant to U.S.S.G. § 5K2.0, based upon the United States Attorney's Office's apparently irrational distinction between Defendant and other similarly situated alien re-entry defendants. At Defendant's sentencing hearing the Government failed to articulate a reason for the charging distinction made in this case. Accordingly, the Court concludes that downward departure is warranted for the reasons explained below.

### POSTURE OF DEFENDANT'S CASE

On November 4, 1997, Defendant pleaded guilty to being an alien aggravated felon in the United States after deportation, in violation of 8 U.S.C. § 1326(b)(2). As Defendant was advised at his change of plea hearing, the maximum penalties for violation of 8 U.S.C. § 1326(b)(2) are 20 years imprisonment, a $250,000 fine, 3 years supervised release, and a $100 special penalty assessment.

The United States Probation Office calculated Defendant's adjusted offense level as 21, including a 3–point reduction for acceptance of responsibility and a 16–point enhancement for having been deported after the commission of an aggravated felony. The parties' plea agreement stipulated to a further 2–point reduction, based upon Defendant's agreement to voluntary deportation. Consequently, the adjusted offense level recommended by the Government at sentencing was 19.

The United States Probation Office calculated Defendant's criminal history category as IV. Defendant received the following points as a result of prior substantive offenses: 1 point for a drunk-driving conviction, 2 points for a drug delivery conviction, and 2 points for a previous alien felon in the United States after deportation conviction.

Based upon the Government's recommended offense level and Defendant's criminal history category, the applicable Sentencing Guideline range would be 46–57 months. Because Defendant's current conviction also constitutes a violation of the terms of supervised release of his previous alien aggravated felon conviction, Defendant also faces a revocation of his supervised release, with a sentencing range of 8–14 months incarceration.

### OVERVIEW OF OTHER ALIEN RE-ENTRY CASES THAT HAVE COME BEFORE THE COURT

While preparing for the sentencing hearing of the defendant, the Court received a proposed plea agreement in the case of *United States v. Leyva–Chavez*, CR–96–256–RHW, which was scheduled for plea and sentence the day before Defendant's sentencing in this

case. Defendant Leyva–Chavez also qualified as an aggravated felon in the United States after deportation and, like Defendant Contreras–Gomez, had returned in violation of a prior sentence. However, the Government indicated that it intended to charge Defendant Leyva–Chavez under 8 U.S.C. § 1326(a), resulting in a significantly lower sentence due to the statutory maximum, capping the sentencing range at 2 years. The charge against Defendant Contreras–Gomez not only differed from that against Defendant Leyva Chavez, but also from the charges against a host of other defendants sentenced in this Court on prior occasions. Because the reason for the different treatment was not apparent from the record, the Court advised the parties in its December 18, 1997 Order, that it would consider the case of *United States v. Javier Leyva–Chavez* when sentencing Defendant Contreras–Gomez.

On December 22, 1997, the day before Defendant Contreras–Gomez's sentencing, Defendant Leyva–Chavez pleaded guilty to being an alien in the United States after deportation in violation of 8 U.S.C. § 1326(a). The maximum penalties for this subsection of § 1326 are 2 years imprisonment, a $250,000 fine, 1 year supervised release, and a $100 special penalty assessment.

After Defendant Leyva–Chavez pleaded guilty, the parties agreed to proceed with immediate sentencing. The parties agreed that, like Defendant Contreras–Gomez, Defendant Leyva–Chavez's adjusted base offense level was 19, including a 3–point reduction for acceptance of responsibility, a 16–point enhancement for having been deported after the commission of an aggravated felony, and a 2–point reduction for voluntary acceptance of deportation.

The parties also agreed that Leyva–Chavez's criminal history category was VI, resulting from the following points for prior substantive offenses: 3 points for delivery of cocaine, 5 points for multiple convictions of being an alien in the United States after deportation, 3 points for possession of cocaine, and 1 point for fourth degree assault.

With an offense level of 19 and criminal history category VI, Defendant Leyva–Chavez's Sentencing Guideline range was 63–78 months. However, because the maximum penalty for the offense charged was 2 years, this Guideline range was inapplicable. Consequently, as contemplated by the plea agreement, the Defendant was sentenced to the statutory maximum of 2 years incarceration and 1 year supervised release. Defendant was also sentenced to 6 months incarceration for violating his supervised release.

As reflected in the December 18, 1997 Order, the contrast in charging between Defendant Contreras–Gomez and Defendant Leyva–Chavez has prompted the Court's concern. From reviewing the record in both the cases, the Court cannot discern a rational basis for choosing to charge the individual with the greater criminal history under § 1326(a), and the individual with the lesser criminal history under § 1326(b)(2). As explained in the December 18, 1997 Order, in addition to having fewer prior felonies, including fewer prior alien re-entry offenses, Defendant Contreras–Gomez does not have a criminal record that differs substantially in age than that of Defendant Leyva–Chavez. Furthermore, the record is devoid of any pertinent personal characteristics that would warrant different treatment of Defendant Contreras–Gomez.

The charging of Defendant Leyva–Chavez is also unprecedented. Approximately fifty percent of the criminal docket before this Court involves alien felons in the United States after deportation, none of which have gone to trial unless charged with some other substantive offense. Among the other alien re-entry cases that have come before this Court since assuming the bench, in only one other case has the Government continued to prosecute an alien under 8 U.S.C. § 1326(b)(2) through the stage of conviction.[1] In *United States v. Arturo Pena–Roman*, CR–96–2064–RHW, the defendant pleaded guilty to § 1326(b)(2). However, the Government accomplished a sentencing departure by agreeing not to ask for the normal 16–point enhancement for an alien aggravated

---

**1.** The Court's review of past alien re-entry cases has been limited to those where the Defendant was convicted only of a re-entry offense, and not a re-entry offense coupled with another concurrent offense, such as drug distribution.

felon. Instead, the base offense level for § 1326 was enhanced only 4 points, under what is now U.S.S.G. § 2L1.2(b)(1)(B) (deportation after commission of a felony). Defendant Pena–Roman had a criminal history category of VI, resulting from the following criminal history points for prior substantive offenses: 1 point for possession of controlled substance, 1 point for drunk driving, 3 points for third degree rape, 3 points for vehicular assault, 1 point for fourth degree assault, and 3 points for being an alien in the United States after deportation. Defendant Pena–Roman was sentenced to 24 months incarceration and 3 years supervised release.

2. The following cases involved charges reduced from 8 U.S.C. § 1326(b)(2) (the Court notes that the sentences imposed in these cases fell within the recommendations of the parties):

● Defendant Ricardo Reyes–Carillo, CR–96–2061–RHW, was originally indicted as an alien aggravated felon in violation of 8 U.S.C. § 1326(b)(2), but pleaded to a superseding information charging him with being an alien felon in violation of 8 U.S.C. § 1326(b)(1). With a criminal history category of IV (resulting from the following points for substantive offenses: 1 point for a drunk-driving offense, 3 points for possession of cocaine with intent to deliver, and 3 points for illegal alien re-entry), Defendant received a sentence of 27 months incarceration and 3 years supervised release.

● Defendant Felix Manuel Aguilar–Martinez, CR–96–2062–RHW, was originally indicted as an alien aggravated felon in violation of 8 U.S.C. § 1326(b)(2), but pleaded to an information superseding indictment charging him with being an alien felon in violation of 8 U.S.C. § 1326(b)(1). With a criminal history category of III (resulting from the following points for prior substantive offenses: 3 points for conspiracy to deliver a controlled substance, 2 points for possession of cocaine, and 1 point for drunk driving), Defendant received a sentence of 8 months incarceration and 3 years supervised release.

● Defendant Miguel Angel Zamudio–Orozco, CR–96–25–RHW, was originally indicted as an alien aggravated felon in violation of 8 U.S.C. § 1326(b)(2), but pleaded to the lesser included offense of being an alien felon in violation of 8 U.S.C. § 1326(b)(1). With a criminal history category of IV (resulting from the following points for prior substantive offenses: 1 point for a hit-and-run, 3 points for delivery of cocaine, 2 points for possession of cocaine, and 1 point for third-degree escape), Defendant received a sentence of 10 months incarceration and 3 years supervised release. Defendant Fidencio Ramirez–Lopez, CR–96–010–RHW, was originally indicted as both an alien aggravated felon in violation of 8 U.S.C. § 1326(b)(2) and an alien felon in violation of 8 U.S.C.

The Court has reviewed the remainder of the its alien re-entry cases that involved defendants with prior aggravated felonies over the past two years. All such cases resulted in convictions for the lesser offenses of being an alien felon in the United States after deportation in violation of 8 U.S.C. § 1326(b)(1) or being an alien in the United States after deportation in violation of 8 U.S.C. § 1326(a). A number of these cases were originally charged as alien aggravated felons in violation of § 1326(b)(2), but were reduced by the Government eliminating the aggravating felony and thereby reducing the applicable sentencing range.[2] Thus the Gov-

§ 1326(b)(1), but pleaded to the latter, lesser charge. With a criminal history of III (resulting from the following points for prior substantive offenses: 3 points for manufacture/delivery of a controlled substance), Defendant received a sentence of 6 months incarceration and 3 years supervised release.

● Defendant Jaime Silva–Chavez, CR–96–144–RHW, was originally indicted as an alien aggravated felon in violation of 8 U.S.C. § 1326(b)(2), but pleaded to an information superseding indictment charging him with being an alien felon in violation of 8 U.S.C. § 1326(b)(1). With a criminal history category of VI (resulting from the following points for prior substantive offenses: 1 point for driving without a valid operator's license, 2 points for fourth degree assault, 1 point for drunk driving, 3 points for delivery of cocaine, 2 points for conspiracy to deliver heroin, and 3 points for alien re-entry), Defendant received a sentence of 24 months incarceration and 3 years supervised release.

● Defendant Fredy Orozco–Rios, CR–96–79–RHW, was originally indicted as an alien aggravated felon in violation of 8 U.S.C. § 1326(b)(2), but pleaded to the lesser included offense of being an alien felon in violation of 8 U.S.C. § 1326(b)(1). With a criminal history category of V (resulting from the following points for prior substantive offenses: 1 point for obstructing/resisting arrest, 1 point for taking a motor vehicle without permission, 1 point for trespass, 1 point for driving with a suspended license, 3 points for delivery of a controlled substance, and 2 points for attempting to elude), Defendant received a sentence of 15 months incarceration and 3 years supervised release.

● Defendant Eusebio Guzman–Villela, CR–96–158–RHW, was originally indicted as an alien aggravated felon in violation of 8 U.S.C. § 1326(b)(2), but pleaded to an information superseding indictment charging him with being an alien felon in violation of 8 U.S.C. § 1326(b)(1). With a criminal history category of V (resulting from the following points for prior substantive offenses: 3 points for theft, 3

ernment was accomplishing a departure in all of these cases through the charging process. There are also a significant number of § 1326(b)(1) cases that were not reduced but appear to have been chargeable under § 1326(b)(2).[3] On the record in several of these cases, the Assistant United States Attorney stated that the aggravated felony was not charged because the guideline range for an alien aggravated felon was too high. The average sentence among the § 1326(b)(1) cases is 11.5 months, with a low of 1.5 months and a high of 27 months.[4]

## THE BASIS FOR DEPARTURE

■ Were the Court to abide by the Government's recommendations and Guidelines in this case, Defendant Contreras–Gomez would receive a sentence over twice as long as the highest sentence ever imposed by this Court, or requested by the Government on an alien felon,[5] despite the fact that his criminal history lies, at worst, within the mid-range of cases handled by this Court. *See* footnote 2. As is evident from the history of alien prosecutions previously discussed, in

points for delivery of a controlled substance, and 2 points for conspiracy to deliver a controlled substance), Defendant received a sentence of 15 months incarceration and 5 years supervised release.

- Defendant Miguel Sanchez–Chavez, CR–97–05–RHW, was originally indicted as an aggravated alien felon in violation of 8 U.S.C. § 1326(b)(2), along with having committed various drug offenses, but pleaded to an information superseding indictment charging him only with being an alien felon in violation of 8 U.S.C. § 1326(b)(1). With a criminal history category of II (resulting from a prior felony conviction for possession of cocaine), Defendant received a sentence of 4 months incarceration and 3 years supervised release.
- Defendant Juan Barajas–Velasquez, CR–97–65–RHW, was originally indicted as an aggravated alien felon in violation of 8 U.S.C. § 1326(b)(2), but pleaded to an information superseding indictment charging him with being an alien in the United States after deportation in violation of 8 U.S.C. § 1326(a). With a criminal history category of V (resulting from the following points for prior substantive offenses: 3 points for delivery of a controlled substance, 2 points for possession of a controlled substance, and 5 points for multiple convictions for alien re-entry), Defendant received a sentence of 132 days incarceration and 1 year supervised release.
- Defendant Abel Emigdio Cruz–Perez, CR–97–2079–RHW, was originally indicted as an alien aggravated felon in violation of 8 U.S.C. § 1326(b)(2), but pleaded to an information superseding indictment charging him with being an alien felon in violation of 8 U.S.C. § 1326(b)(1). With a criminal history category of V (resulting from the following points for prior substantive offenses: 3 points for possession of a controlled substance with intent to distribute, 1 point for fourth-degree assault, and 4 points for multiple convictions for possession of a controlled substance), Defendant received a sentence of 21 months incarceration and 3 years supervised release.
- Defendant Elias Valdovinos-Sanchez, CR–97–2012–RHW, was originally indicted as an alien aggravated felon in violation of 8 U.S.C. § 1326(b)(2) but pleaded guilty to an informa-

tion superseding indictment charging him with being an alien felon in violation of 8 U.S.C. § 1326(b)(1). With a criminal history category of VI (resulting from the following points for prior substantive offenses: 2 points for multiple trespasses, 1 point for driving without a valid operator's license, 1 point for shoplifting, 4 points for multiple convictions of possession of cocaine, 2 points for alien re-entry, and 2 points for bribery of a witness), Defendant received a sentence of 20 months incarceration and 3 years supervised release.

3. For example:

- Defendant Marcos Martinez–Martinez, CR–96–159–RHW, pleaded to an indictment charging a violation of 8 U.S.C. § 1326(b)(1), while holding a prior conviction for delivery of a controlled substance.
- Defendant Roman Hernandez–Lopez, CR–97–51–RHW, pleaded to an indictment charging a violation of 8 U.S.C. § 1326(b)(1), while holding a prior conviction for delivery of a controlled substance.
- Defendant Juan A. Vielma–Felix, CR–97–138–RHW, pleaded to an indictment charging a violation of 8 U.S.C. § 1326(b)(1), while holding a 1993 conviction for robbery (for which Defendant received 46 months incarceration).
- Defendant Vicente Irieno Cruz–Aragon, CR–97–2004–RHW, pleaded to an indictment charging a violation of 8 U.S.C. § 1326(b)(1), while holding a 1996 conviction for conspiracy to deliver heroin.

4. At the sentencing hearing for Defendant Leyva–Chavez, the Assistant United States Attorney stated that her office tries to charge alien re-entry cases according to a consistent policy, and that the policy she has been using is, first, to allow a returning alien to plead to a charge under § 1326(a), and then, if the alien returns, to charge under § 1326(b)(2). The Court notes that while Defendant Leyva–Chavez has been allowed to plead to § 1326(a) numerous times, Defendant Contreras–Gomez has never received the benefit of this policy.

5. The Court's calculations are based upon the records contained in chambers.

each case the aggravated felony was not ultimately charged or, as in the case of Pena–Roma, discussed above, the Government agreed to not include the 16–point enhancement in the calculation of the guideline range. When asked at sentencing why its approach in the case at hand was so vastly different, the Government failed to identify a factual reason for treating Defendant Contreras–Gomez more seriously than other alien re-entry cases. Having found no rational basis on the record, the Court concludes that the charging distinction in this case is without basis, resulting in a highly unusual mitigating circumstance not taken into account in the United States Sentencing Guidelines. Consequently, a downward departure is warranted under U.S.S.G. § 5K2.0, as explained below.

1. *The United States Sentencing Commission Did Not Contemplate Arbitrary–Charging Distinctions.*

■ As was recognized at Defendant Contreras–Gomez's sentencing hearing, the Government unarguably has a great deal of discretion in making charging decisions, and such decisions are largely unreviewable. However, it is the Court's function to issue sentences, and it cannot remain passive when an unexplainable charging distinction results in such disparate sentences. To do so renders courts irrelevant in the sentencing process to an extent not permitted by the law. The departure authority given the courts under the Guidelines provides a remedy.

The Guidelines grant courts discretion to depart in sentencing when they observe circumstances not contemplated by the Sentencing Commission in creating the standard guideline ranges. Irrational charging decisions could not have been considered by the Sentencing Commission in setting guideline ranges because such decisions would be contrary to law.

The Sentencing Reform Act of 1984 created the United States Sentencing Commission with the goal that it:

provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices.

28 U.S.C. § 991(b)(1)(B).

The Sentencing Guidelines Manual also sets forth the intent of the Sentencing Reform Act. The manual states that the objectives of the Sentencing Reform Act are to "enhance the ability of the criminal justice system to combat crime through an effective, fair sentencing system." The manual also provides three specific congressional goals of the act:

"Congress **first** sought honesty in sentencing. [To be achieved through requiring determinant sentencing and eliminating reductions by a parole board.] ... **Second,** Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders. **Third,** Congress sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity."

United States Sentencing Commission, *Guidelines Manual* Ch. 1 Pt. A(3) at 2 (Nov. 1997) (emphasis added).

It is apparent that the Commission assumed that the Government would charge similarly situated defendants similarly in order that proportionality, i.e., the imposition of appropriately different sentences for criminal conduct of differing severity, would result. Neither uniformity of sentences for similarly situated individuals, or proportionality of sentences for conduct of differing severity would be achieved if a United States Attorney could determine the sentence through his or her charging decision alone, regardless of its irrationality. The Sentencing Commission could not account for Assistant United States Attorneys making such decisions in charging, and consequently left to the courts the consideration of such matters under their departure authority. Thus, the separation of powers between the judiciary and the executive is preserved. The charging decision is not disturbed. The

Court focuses on the sentencing factors, which are its province.

2. *The Court's decision as to the applicability of USSG § 5K2.0 does not open the flood gates to critique of prosecutorial decisions.*

Only in the rare case will the Government's charging distinction fall outside the discretion contemplated by the Sentencing Guidelines. The case at hand is unique because when asked to account for its charging distinction, the Government offered no *factual* justification for the different treatment of Defendant Contreras–Gomez, even after notice from the Court of its intent to consider such difference as a grounds for departure. Virtually any articulable basis could have justified the Government's distinction. However, because no distinction was made, the Court concludes that mitigating circumstances exist.[6]

The Government's legal justification for its decision is inadequate. At sentencing, the Government stated that it holds unreviewable discretion to make charging distinctions, such as the one in this case. While it may be true that the Court cannot require the Government to change a charging decision, that fact does not control the Court's power to issue sentences, and to depart from the Sentencing Guidelines when an unusual mitigating circumstance exists. *See United States v. Boshell,* 952 F.2d 1101, 1108 (9th Cir.1991) (sentencing judge may depart to account for the fact that some codefendants were permitted to plead to pre-guidelines offenses, while others faced post-guideline pleas).

Sentencing the defendant to the guideline range would result in a sentence significantly above that of similarly situated defendants in this Court, resulting in a disparate unproportionate sentence in contravention of the guidelines policy in a manner not contemplated by the Commission.

Accordingly, **IT IS HEREBY ORDERED:**

1. ·Defendant Contreras–Gomez is **GRANTED** a downward departure pursuant to U.S.S.G. § 5K2.0. This departure is fashioned so that it treats Defendant as if he were charged as an alien felon rather than an alien aggravated felon. This level is consistent with the charges and sentences of the similarly situated defendants before this court. Accordingly, the appropriate calculation is an initial base offense level of 8, pursuant to U.S.S.G. § 2L1.2(a), a 4–level increase pursuant to U.S.S.G. § 2L1.2(b)(1)(2), and a 2–point decrease for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). The resultant adjusted offense level is 10. With a criminal history category of IV, Defendant's Sentencing Guideline range is 15–21 months. Based upon this range, Defendant is sentenced to 21 months incarceration, a $100 special penalty assessment, no fine based on indigency, and 3 years supervised release with the conditions provided in the Presentence Investigation Report.

2. Defendant's motion for downward departure (**Ct.Rec.19**) based upon Application Note 5 to U.S.S.G. § 2L1.2 is **DENIED.** Application Note 5 states that a downward departure may be warranted for a defendant facing a 16–point enhancement for being an alien aggravated felon if, among other things, the defendant "has previously been convicted of only one felony offense." In this case, Defendant has two previous felony offenses—one drug offense, and one prior offense for illegal re-entry. Consequently, Defendant does ·not meet the criteria for departure. In any event, Defendant's objection to the ·16–point enhancement is met by this Court's departure under U.S.S.G. § 5K2.0.

·'3. The Court finds that Defendant has violated the terms of his supervised release, imposed in the case of CR–95–2065. Consequently, Defendant's supervised release is hereby **REVOKED.** Based upon a Grade B violation (conduct constituting a federal, state or local offense) and Defendant's criminal

---

**6.** For example, the Government might have justified its charging distinction by stating that it has decided to begin cracking down on alien re-entry defendants, starting with the case at hand. This would be a legitimate justification since a change in policy would have to start at some point. However, the Government did not provide this justification for its distinction and, even if it had, the plausibility of the justification would be questionable, given that Defendant Leyva–Chavez was charged after Defendant Contreras–Gomez.

history at the time of his sentencing (level III), the Guideline Range is 8–14 months. A sentence of 9 months is imposed, to be served consecutive to the time imposed in cause number CR–97–2086–RHW.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and to provide copies to counsel.